IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| JOHN DOE, | : |
|                     *Plaintiff*, | : No. 3:23-cv-00149 |
| v. | : |
| PUBLIC COMPANY ACCOUNTING OVERSIGHT BOARD, | : |
|                     *Defendant*. | : |

**PLAINTIFF'S MOTION FOR LEAVE TO
LITIGATE THIS CASE PSEUDONYMOUSLY AND BRIEF IN SUPPORT THEREOF**

Plaintiff respectfully moves for leave to litigate this action under the pseudonym "John Doe" rather than in his actual name. As explained below, three arguments support this motion: (1) Plaintiff's lawsuit challenges the enormous prosecutorial power being wielded against him by a quasi-governmental regulator purporting to act under federal statutory law; (2) public revelation of Plaintiff's true identity would contravene statutory confidentiality protections enacted by Congress in the Sarbanes-Oxley Act of 2002 and subject Plaintiff to severe and immediate reputational harm; and (3) allowing Plaintiff to proceed pseudonymously would in no way prejudice or disadvantage the Defendant—which already knows Plaintiff's true identity—or the public at large.

**BACKGROUND**

This action seeks to stop Defendant Public Company Accounting Oversight Board ("PCAOB" or "Board" ) from continuing its unlawful and unconstitutional prosecution of an

accountant.  The Board is a nominally private, nonprofit corporation empowered by Congress to regulate and punish the accountants and accounting firms that audit the financial statements of publicly traded companies and broker-dealers.  *See generally* 15 U.S.C. § 7211.  Punishment for violating Board rules can be severe, including loss of livelihood and civil penalties up to $1 million per violation for natural persons.  *Id*. § 7215(c)(4) and (c)(5) (as adjusted for inflation pursuant to the Federal Civil Penalties Inflation Adjustment Act Improvements Act of 2015 (codified at 28 U.S.C. § 2461 note)).  A willful violation of Board rules can also lead to million-dollar criminal fines and incarceration for up to 20 years.  *See id*. §§ 78ff(a) and 7202(b)(1).

After several years of investigation, the Board recently launched a formal prosecution of Plaintiff seeking to impose significant civil monetary penalties against him and effectively strip him of his chosen, licensed profession as an accountant.  Not only are the Board's allegations false and defamatory, but worse, the Board seeks to adjudicate them in an unfair and unconstitutional process.

Fortunately for Plaintiff and others subjected to the Board's incendiary but unproven allegations, Congress put confidentiality limits in place to protect the personal privacy and reputations of accused parties unless and until the Board's disciplinary process has run its full course and a comparatively accountable governmental body—specifically, the Securities and Exchange Commission (SEC)—determines that public disclosure of the allegations is appropriate.  *See* 15 U.S.C. § 7215(b)(5)(a) and (c)(2).  Plaintiff should not be required to sacrifice those protections as a pre-condition to challenge the constitutionality of the Board and its processes.

**ARGUMENT**

Although plaintiffs ordinarily are required to use their real names when litigating in federal court, the Fifth Circuit and other courts have allowed plaintiffs to litigate pseudonymously in appropriate circumstances.  *See, e.g.*, *Doe v. Stegall*, 653 F.2d 180, 184-86 (5th Cir. 1981); *Doe v. Univ. of Miss.*, 2018 U.S. Dist. LEXIS 28836 at *2-5 (S.D. Miss. 2018).  This exercise of judicial discretion requires "a balancing of considerations calling for maintenance of a party's privacy against the customary and constitutionally-embedded presumption of openness in judicial proceedings."  *Stegall*, 653 F.2d at 186.  Here, that balancing weighs decidedly in favor of pseudonymity.

**I.    Fifth Circuit Precedent Supports Pseudonymity**

The Fifth Circuit has eschewed any "hard and fast formula" for determining when a plaintiff may proceed pseudonymously, but has identified a non-exhaustive list of three circumstances that weigh in favor of protecting a plaintiff's anonymity:  (1) when a plaintiff sues to challenge governmental activity; (2) when prosecution of the suit compels a plaintiff to disclose information "of the utmost intimacy"; or (3) when a plaintiff is compelled to admit its intention to engage in illegal conduct, thereby risking criminal prosecution.  *Id*. at 185 (citing *S. Methodist Univ. Ass'n of Women Law Students v. Wynne & Jaffe*, 599 F.2d 707 (5th Cir. 1979)).

Plaintiff here fits squarely into the first circumstance.  This case presents purely legal challenges to the constitutionality of the enforcement and disciplinary process being deployed against him by the Defendant Board, which is acting essentially as an arm of the federal government under powers purportedly granted by Congress in the Sarbanes-Oxley Act of 2002. The Fifth Circuit recognizes that such cases do not present the same concerns about potential reputational injury to the defendant resulting from pseudonymous plaintiffs as do suits against

3

purely private parties, particularly private individuals. *See S. Methodist Univ. Ass'n of Women Law Students*, 599 F.2d at 713; *E.B. v. Landry*, No. 19-862-JWD-SDJ, 2020 WL 5775148, at *2 (M.D. La. Sept. 28, 2020) (observing that cases "largely legal in nature" and those involving the "constitutional validity of government activity" support anonymity and collecting cases); *Rose v. Beaumont Indep. Sch. Dist.*, 240 F.R.D. 264, 266-67 (E.D. Tex. 2007) ("[G]overnmental bodies do not share the concerns about reputation that private individuals have when they are publicly charged with wrongdoing" (internal quotation marks omitted)). Because the Board exercises governmental or quasi-governmental powers including regulation and enforcement, it should be subject to the same analysis. *See Free Enterprise Fund v. PCAOB,* 561 U.S. 477, 486; 130 S. Ct. 3138 (2010) (holding "the Board is 'part of the Government' for constitutional purposes") citing *Lebron v. National Railroad Passenger Corp.,* 513 U.S. 374, 397, 115 S. Ct. 961, 130 L.Ed.2d 902 (1995).

**II.    Pseudonymity Would Preserve Personal Privacy and Reputational Protections Legislated by Congress in Sarbanes-Oxley and Incentivize Challenges to Abuses of Executive Power**

In *Doe v. MIT*, 46 F.4th 61 (1st Cir. 2022), the First Circuit recently offered its own thoughtful and comprehensive insights into the kinds of "paradigm" cases where parties should be permitted to litigate pseudonymously—and our case fits squarely into two of those paradigms. One includes "suits that are bound up with a prior proceeding made confidential by law." *Id*. at 71-72. As the court explained, "[t]his concern manifests itself when denying anonymity in the new suit would significantly undermine the interest served by that confidentiality." *Id*.

That is precisely the case here. In Sarbanes-Oxley, Congress balanced the critical personal privacy and reputational interests of Board-accused accountants against the competing interest of public transparency, and in doing so made the deliberate legislative choice to favor

4

confidentiality, unless and until the Board completes its proceedings, proves its allegations, and thereby enables the accused to appeal the case to SEC.  *See* 15 U.S.C. § 7215(b)(5)(a) and (c)(2).  But if, to challenge the constitutionality of the Board's enforcement and disciplinary process, Plaintiff were required to publicly reveal his true identity before the point at which Congress determined such public revelation to be appropriate, the personal privacy and reputational protections served by Sarbanes-Oxley would be nullified.

Allowing Plaintiff to proceed pseudonymously also comports with a related paradigm the First Circuit called out for pseudonymity: "cases in which anonymity is necessary to forestall a chilling effect on future litigants who may be similarly situated."  *Doe*, 46 F.4th at 71.  It appears that Plaintiff is the first litigant to proactively file suit in an Article III district court challenging the constitutionality of a formal, nonpublic disciplinary proceeding being prosecuted by the Board.[1]  And if he is denied leave to litigate the case pseudonymously, his may likely be the last, because few if any Board-accused accountants or firms have the capacity to fight back at all, much less the rare fortitude required to fight that battle in a public forum, years before the Board's accusations might otherwise become a matter of public record.

In the alternative, theoretically, a respondent could persevere through the Board's entire multi-year disciplinary gauntlet, followed by at least another year or two of appellate proceedings before SEC, *see* 15 U.S.C. § 7217(c) (as a result of which the case would become public), and then eventually challenge the constitutionality of the Board's process in a federal court of appeals, *see* 15 U.S.C. § 78y(a).  But that alternative option is largely illusory given its ruinously prolonged and expensive course.  Since its creation in 2002, the Board has completed

---

[1] The successful petitioners in *Free Enterprise Fund v. PCAOB* sued the Board before initiation of formal disciplinary proceedings, which never occurred.

nearly 400 formal disciplinary proceedings, many of which accused multiple respondents.  Yet according to the limited information available on the Board's public website (pcaobus.org/oversight/enforcement/enforcement-actions), only 25 of those proceedings (about six percent) were ever adjudicated by the Board, with seven of those 25 cases being defaults.  All of the Board's hundreds of other disciplinary cases were resolved through settlements in which the respondents capitulated to the Board's demands and sanctions without mounting a defense, much less raising constitutional challenges to the process itself.  And of the 25 Board-adjudicated cases, only eight appear to have ever been appealed to SEC, with only two of those eight cases (*i.e.*, approximately one-half of one percent of the hundreds of Board disciplinary proceedings completed over the Board's first 20 years in existence) ever being further appealed to an Article III appeals court.

Given this disquieting history (and the economic realities it reflects), opportunities for meaningful judicial oversight of the Board's secretive disciplinary process are likely to remain few and far between—especially if proactive litigants like Plaintiff are required to "out" themselves prematurely to challenge the process.  Courts should instead welcome such challenges wherever possible to ensure timely judicial scrutiny of prosecutorial processes that are alleged to violate the constitutional separation of powers and individual constitutional rights.  After all, as the Supreme Court has repeatedly emphasized, it is "the claims of individuals—not of Government departments—[that] have been the principal source of judicial decisions concerning separation of powers and checks and balances," *Bond v. United States*, 564 U.S. 211, 222 (2011), such that courts should avoid "creating[ing] a disincentive" to bringing such claims, *Ryder v. United States*, 515 U.S. 177, 182-83 (1995); *accord Lucia v. SEC*, 138 S. Ct. 2044,

2055 n.5 (2018) (quoting *Ryder* in noting that courts should "create '[]incentive[s]'" for litigants to raise Appointments Clause challenges against executive action).

Allowing court challengers to remain protected by the statutory confidentiality provisions of Sarbanes-Oxley undoubtedly would incentivize more Board-accused accountants to seek prompt judicial decisions on the constitutionality of the Board's disciplinary processes and tactics. Conversely, forcing challengers to prematurely make public the Board's accusations against them would strongly disincentivize such challenges and have an obvious chilling effect on would-be challengers, thereby allowing a constitutionally dubious scheme to continue in the shadows unchecked for an indeterminate period of additional years. As the First Circuit recognized in *Doe*, this alone should tip the balance heavily in favor of allowing pseudonymity. 46 F.4th at 71.

### III. Pseudonymity Would Not Prejudice the Board's Defense or the Public's Right to Know

Courts are rightly concerned when a plaintiff alleges wrongdoing against a defendant—especially a private party defendant—yet refuses to allow the defendant to learn the plaintiff's true identity, especially under circumstances that might prejudice the defendant's ability to mount an effective defense. But that is not the case here. The Defendant Board already knows Plaintiff's identity, and indeed it has been invasively investigating him for the past several years. For this reason, there would be no conceivable prejudice to the Board in allowing Plaintiff to litigate this case pseudonymously and doing so would in no way impair the Board's ability to defend itself.

Nor is Plaintiff's identity of any particular interest to the public at large. He is raising purely legal and constitutional objections to a quasi-governmental process over which he has no control. Indeed, there are no nonpublic facts about him or his underlying Board proceeding—

least of all his name—that would render his constitutional objections any more or less meritorious if revealed in this matter. For purposes of this case, the only relevant fact about Plaintiff is that he, like hundreds of other accountants before him and sure to follow him, is an accused respondent in a Board disciplinary proceeding—a fact already made clear in his Complaint.

## CONCLUSION

For the foregoing reasons, Plaintiff should be granted leave to litigate the case pseudonymously.

Dated: January 19, 2023

       /s/ Katherine Addleman
Russell G. Ryan (*pro hac vice forthcoming*)
Casey Norman (*pro hac vice forthcoming*)
NEW CIVIL LIBERTIES ALLIANCE
1225 19th Street, NW
Suite 450
Washington, DC  20036
 (202) 967-2503
russ.ryan@ncla.legal

Ian D. Roffman *(pro hac vice forthcoming)*
Melanie V. Woodward *(pro hac vice forthcoming)*
NUTTER MCCLENNEN & FISH LLP
Seaport West
155 Seaport Blvd.
Boston, MA 02210
(617) 439-2421
iroffman@nutter.com

Katherine Addleman
Ronald W. Breaux
HAYNES AND BOONE, LLP
2323 Victory Ave.
Dallas, TX 75219
(214) 651-5783
kit.addleman@haynesboone.com

*Counsel for Plaintiff John Doe*

## **CERTIFICATE OF CONFERENCE**

Pursuant to Local Rule 7.1(a) and (b), counsel for Plaintiff, Ian D. Roffman, hereby certifies that on January 13, 2023, I conferred with counsel for Defendant to determine whether the motion is opposed. As of the filing of this motion, Defendant has not yet determined its position on the motion.

/s/ Ian D. Roffman
Ian D. Roffman *(pro hac vice forthcoming)*