**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| JOHN DOE, | : |
| | : |
| *Plaintiff*, | :     No. 24-cv-00780 |
| | : |
| v. | : |
| | : |
| PUBLIC COMPANY ACCOUNTING | : |
| OVERSIGHT BOARD, | : |
| | : |
| *Defendant.* | : |
| | : |

**DEFENDANT'S MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION TO
LITIGATE THIS CASE PSEUDONYMOUSLY**

## <u>TABLE OF CONTENTS</u>

**Page**

INTRODUCTION ..................................................................................................................1

BACKGROUND ..................................................................................................................1

    A.    The Public Company Accounting Oversight Board ..............................................1

    B.    John Doe and His Proceedings Before the Board....................................................2

    C.    Doe's Claims for Relief ...........................................................................................3

    D.    Transfer to This Court and Subsequent Proceedings..............................................3

ARGUMENT .......................................................................................................................4

    A.    The Traditional Five-Factor Test Weighs Heavily in Favor of Disclosure. ...........5

            1.    *Factor One:  Doe Seeks "Merely to Avoid the Annoyance and Criticism That May Attend Litigation," Not "To Preserve Privacy in a Matter of a Sensitive and Highly Personal Nature."*............................5

            2.    *Factors Two and Three:  Disclosure of Doe's Identity Poses No Risk of Retaliatory Harm and Doe Is an Adult.* ...........................................9

            3.    *Factor Four:  Doe's Constitutional Challenge to Federal Statutes Triggers a Particularly Heightened Public Interest in Disclosure.*............9

            4.    *Factor Five:  Although Doe's Anonymity Would Not Prejudice the Board, That Alone Cannot Entitle Him to Proceed Anonymously.*............12

    B.    Doe's Other Arguments Are Meritless. ..................................................................12

            1.    *The Nonpublic Nature of Board Proceedings Does Not Entitle Doe to Pseudonym Status in Federal Litigation.*................................................13

            2.    *Doe's Unsubstantiated Concern About a Chilling Effect Does Not Warrant Pseudonym Status.*......................................................................16

CONCLUSION...................................................................................................................18

CERTIFICATE OF SERVICE ..........................................................................................19

# <u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

**FEDERAL CASES**

*Bennett v. Sprint Nextel Corp.*,
  No. 11-9014-MC-W-ODS, 2012 WL 4829312 (W.D. Mo. Oct. 10, 2012) ...........................13

*Doe v. Dep't of Army*,
  No. 1:21-MC-00114 (BAH), 2021 WL 4260393 (D.D.C. Sept. 14, 2021) ..............................8

*Doe v. Fed. Republic of Germany*,
  680 F. Supp. 3d 1 (D.D.C. 2023) .........................................................................................10

*Doe v. Garland*,
  No. 1:21-MC-00044 (BAH), 2021 WL 3622425 (D.D.C. Apr. 28, 2021) ...............6, 7, 12, 15

*Doe v. Lieberman*,
  No. 1:20-CV-02148 (BAH), 2020 WL 13260569 (D.D.C. Aug. 5, 2020) ..........................7, 8

*Doe v. Lieberman*,
  No. 20-CV-2148 (CRC), 2022 WL 3700905 (D.D.C. Aug. 26, 2022)...............................8, 17

*Doe v. Lieberman*,
  No. 22-5221, 2022 WL 4389332 (D.C. Cir. Sept. 20, 2022)...................................................8

*Doe v. Lynch*,
  No. CV 16-253 (BAH), 2016 WL 10844617 (D.D.C. Apr. 28, 2016) .....................................9

*Doe v. Massachusetts Inst. of Tech.*,
  No. CV 21-12060 (RGS), 2022 WL 16554725 (D. Mass. Oct. 31, 2022) .......................15, 17

*Doe v. Massachusetts Inst. of Tech.*,
  46 F.4th 61 (1st Cir. 2022)..................................................................................15, 16, 17

*Doe v. McKernan*,
  No. CV 24-488 (JEB), 2024 WL 1143932 (D.D.C. Feb. 23, 2024) ............................... *passim*

*Doe v. Rogers*,
  No. CV 12-01229 (TFH), 2023 WL 1470007 (D.D.C. Feb. 2, 2023) ...................................6, 7

*Doe v. U.S. Dep't of Justice*,
  No. CV 23-1467 (JEB), 2023 WL 3883939 (D.D.C. June 1, 2023)............................... *passim*

*Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*,
  561 U.S. 477 (2010)..........................................................................................................2, 9

**TABLE OF AUTHORITIES**
**(continued)**

**Page(s)**

*John Doe Co. No. 1 v. Consumer Financial Protection Bureau*,
    195 F. Supp. 3d 9 (D.D.C. 2016) .............................................................................11

*K.J. v. United States*,
    No. 1:22-CV-00180 (BAH), 2022 WL 22624608 (D.D.C. Jan. 23, 2022)............................11

*M.A. v. Mayorkas*,
    No. CV 23-1843 (JEB), 2023 WL 5321924 (D.D.C. July 6, 2023) ................................11

*Metlife, Inc. v. Fin. Stability Oversight Council*,
    865 F.3d 661 (D.C. Cir. 2017)...................................................................................14

*National Association of Waterfront Employers v. Chao*,
    587 F. Supp. 2d 90 (D.D.C. 2008) ......................................................................11, 12

*In re Sealed Case*,
    971 F.3d 324 (D.C. Cir. 2020) ......................................................................... *passim*

*SEC v. Goldstone*,
    301 F.R.D. 593 (D.N.M. 2014)...................................................................................13

*Sponsor v. Mayorkas*,
    No. CV 23-712 (JEB), 2023 WL 2598685 (D.D.C. Mar. 22, 2023) ......................................11

**ADMINISTRATIVE DECISION**

*In re Kabani & Co.*,
    SEC Release No. 34-76266, 2015 WL 6447449 (Oct. 26, 2015)............................14

**FEDERAL STATUTES**

5 U.S.C. § 552(b)(6) ...............................................................................................15

15 U.S.C. § 78s(d)-(e)................................................................................................2

15 U.S.C. § 7211(a) ...................................................................................................1

15 U.S.C. § 7212(a) ...................................................................................................2

15 U.S.C. § 7213(a)(1)...............................................................................................2

15 U.S.C. § 7215.................................................................................................2, 13

**TABLE OF AUTHORITIES**
**(continued)**

**Page(s)**

15 U.S.C. § 7217(c) .................................................................................................2

20 U.S.C. § 1232g(b)(1) ........................................................................................15

Sarbanes-Oxley Act of 2002, Pub. L. No. 107-204, 116 Stat. 745......................1, 2, 13

Securities Exchange Act, 15 U.S.C. § 78y(a) .....................................................2, 14

**CONSTITUTIONAL PROVISIONS**

U.S. CONST. amend. V ..........................................................................................3, 10

U.S. CONST. amend. VII.............................................................................................3

U.S. CONST. amend. XIV ..........................................................................................11

## INTRODUCTION

When the Public Company Accounting Oversight Board ("Board") brought disciplinary proceedings against Plaintiff John Doe, Doe responded by suing in federal court. His complaint identifies a long list of alleged constitutional violations in the Board's structure and operation, contending that these violations "deprived" him of his "fundamental right[s]." Compl. ¶ 58. Although Doe wanted to avail himself of federal court, he did not want to follow the ordinary rule that federal judicial proceedings are open to the public and that "parties to a lawsuit [must] openly identify themselves." *In re Sealed Case*, 971 F.3d 324, 326 (D.C. Cir. 2020) (citation omitted). He accordingly filed the instant motion, asking this Court to grant him the "rare dispensation" of being allowed to proceed under a pseudonym. *Id.* (citation omitted).

Doe's motion fails to show that a departure from the ordinary rule of public disclosure is warranted. The case does not threaten revelation of any highly personal information that should be hidden from the public. The suit does, however, attack a significant federal statute, creating a heightened need for public information. Doe's arguments, if accepted, would require permitting pseudonym status in any case that implicated some arguably sensitive element—that is, in just about any case. The Court should deny Doe's attempt to upend the "deeply rooted tradition" of public access to judicial proceedings. *In re Sealed Case*, 971 F.3d at 326.

## BACKGROUND

### A.    The Public Company Accounting Oversight Board

Congress established the Board in the Sarbanes-Oxley Act of 2002, Pub. L. No. 107-204, 116 Stat. 745, to oversee the audits of public companies that are subject to the securities laws. 15 U.S.C. § 7211(a). Organized as a nonprofit corporation under the laws of the District of Columbia, the Board carries out its functions under the comprehensive supervision of the SEC in much the same way that self-regulatory organizations ("SROs") like the New York Stock Exchange help

1

regulate the securities markets with SEC oversight.  *See Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*, 561 U.S. 477, 484 (2010).  Accounting firms that audit publicly traded companies and certain broker-dealers must register with the Board and comply with certain auditing and other professional standards established by the Board.  15 U.S.C. §§ 7212(a), 7213(a)(1).  To promote compliance, the Board may investigate any act or omission by a registered public accounting firm or associated person that may violate the Sarbanes-Oxley Act, the Board's rules, or the provisions of the securities laws relating to the preparation and issuance of audit reports.  15 U.S.C. § 7215(b)(1).  The Board may also institute disciplinary proceedings against any registered firm or associated person and impose sanctions for violations of those provisions.  15 U.S.C. § 7215(c).

The Board's sanctions are subject to review by the SEC under the same provisions that govern review of SRO sanctions.  15 U.S.C. § 7217(c)(2) (citing 15 U.S.C. § 78s(d)-(e)).  The SEC can cancel or modify any sanction it deems "excessive, oppressive, inadequate, or otherwise not appropriate."  15 U.S.C. § 7217(c)(3).  The SEC's order, in turn, is subject to review in the court of appeals under the Securities Exchange Act.  15 U.S.C. § 78y(a).

### B.       John Doe and His Proceedings Before the Board

The Complaint alleges that John Doe was previously employed as an auditor at a firm ("Firm") where he was part of a team that performed component audit procedures relating to a publicly traded company ("Company").  Compl. ¶ 3.  In early 2022, the Board informed Doe that he might become the subject of disciplinary proceedings, alleging that Doe had "failed to cooperate with the Board's inspection and investigation" of the Firm's role in the 2015 audit of the Company.  *Id.* ¶ 54.  The Board did not suggest that it would initiate proceedings related to the "quality of the underlying audit work" Doe performed for the Firm.  *Id.*  In December 2022, the Board instituted formal disciplinary proceedings against Doe.  *Id.* ¶ 57.  Those proceedings are still pending.

### C.    Doe's Claims for Relief

Despite those ongoing Board disciplinary proceedings, Doe chose to launch a collateral attack on the Board.  On January 19, 2023, Doe filed a complaint in the Northern District of Texas (the "Complaint") together with a motion for leave to litigate this action under the pseudonym "John Doe."

In the Complaint, Doe alleges that the Board's disciplinary proceedings violate the Constitution and seeks declaratory and injunctive relief as to six separate claims.  Specifically, he claims that (1) "the Board's taxing and funding scheme" violates Article I of the Constitution and separation-of-powers principles, Compl. ¶ 62; (2) the Board and its staff are violating Article II of the Constitution by "exercising core executive law enforcement power against [Doe] without meaningful direction and supervision by principal officers of the Executive Branch," *id.* ¶ 68; (3) the hearing officer overseeing his disciplinary proceedings is an inferior Officer who was "not lawfully appointed in accordance with the [Constitution's] Appointments Clause," *id.* ¶ 73; (4) the hearing officer "enjoys multiple layers of protection from removal by the President," in violation of Article II of the Constitution, *id.* ¶ 78; (5) the Board's disciplinary proceedings are procedurally unfair for "accused accountants," in violation of the Due Process Clause of the Fifth Amendment, *id.* ¶¶ 81-82; and (6) the disciplinary proceedings are "depriving [him] of any opportunity to defend himself before a jury," in violation of the Seventh Amendment, *id.* ¶ 85.

### D.    Transfer to This Court and Subsequent Proceedings

The Board moved to dismiss or, in the alternative, to transfer Doe's complaint on multiple grounds.  On March 13, 2024, the Northern District of Texas held that it lacked personal jurisdiction and transferred the case to this District.  Plaintiff subsequently filed a renewed motion for leave to litigate under a pseudonym in this Court.

**ARGUMENT**

The general rule in federal litigation is that a "complaint must identify the plaintiffs." *Doe v. McKernan*, No. CV 24-488 (JEB), 2024 WL 1143932, at *1 (D.D.C. Feb. 23, 2024), *appeal filed*, No. 24-5049 (D.C. Cir. Mar. 13, 2024). A party seeking to depart from that ordinary rule and proceed under a pseudonym "bears the weighty burden of both demonstrating a concrete need for such secrecy, and identifying the consequences that would likely befall [him] if forced to proceed in [his] own name." *In re Sealed Case*, 971 F.3d at 326.

To assess whether a party has made such a showing, the D.C. Circuit has identified "five non-exhaustive factors" courts should balance. *In re Sealed Case*, 971 F.3d at 326-27. Those factors weigh decisively in favor of disclosing Doe's identity here. This suit does not implicate "highly personal" or "intimate" details about Doe (factor one), does not create any risk of retaliation against him (factor two), and does not involve minors (factor three). The case does, however, involve a broad constitutional challenge to a federal statutory scheme that could have significant effects on parties beyond this suit, creating a forceful interest in public disclosure (factor four). Only the fifth and final factor—whether Doe's identity is known to the Board—supports Doe's bid for anonymity. The caselaw makes clear that such a meager showing is insufficient to overcome the presumption of openness in judicial proceedings.

Lacking support in this Circuit's balancing test, Doe argues that, even apart from that test, he is entitled to proceed under a pseudonym because Board proceedings are confidential by statute and disclosing his name would have a chilling effect on future litigation. Neither argument has merit. The statute providing for the confidentiality of Board proceedings does not provide for confidentiality in federal court litigation and, accordingly, does not displace the ordinary rule of public access to judicial proceedings. And Doe's concern about potential chilling effects is already addressed under the ordinary five-factor test—a test that, again, Doe cannot meet.

4

### A.     The Traditional Five-Factor Test Weighs Heavily in Favor of Disclosure.

The D.C. Circuit has identified "five non-exhaustive factors" courts should consider in assessing whether to permit pseudonym status:  "[1] whether the justification asserted by the requesting party is merely to avoid the annoyance and criticism that may attend any litigation or is to preserve privacy in a matter of a sensitive and highly personal nature; [2] whether identification poses a risk of retaliatory physical or mental harm to the requesting party or[,] even more critically, to innocent non-parties; [3] the ages of the persons whose privacy interests are sought to be protected; [4] whether the action is against a governmental or private party; and, relatedly, [5] the risk of unfairness to the opposing party from allowing an action against it to proceed anonymously."  *In re Sealed Case*, 971 F.3d at 326-27 (citation omitted and alteration accepted).  Those factors weigh heavily in favor of public disclosure of Doe's identity.

> 1.     *Factor One:  Doe Seeks "Merely to Avoid the Annoyance and Criticism That May Attend Litigation," Not "To Preserve Privacy in a Matter of a Sensitive and Highly Personal Nature."*

The first factor weighs strongly in favor of disclosure because this case does not concern a matter of a sensitive and highly personal nature.  This factor typically protects "intimate issues such as sexual activities, reproductive rights, bodily autonomy, medical concerns, [and] the identity of abused minors."  *In re Sealed Case*, 971 F.3d at 327.  Doe does not contend that any such intimate information would be revealed by litigating this case publicly.  Nor could he:  the Complaint's core allegations concern *the Board's* conduct and structure.

Doe instead contends that this factor supports him because if his "identity were revealed he would risk losing employment opportunities and the ability to pursue his chosen profession."  Mot. 4.  But as this Court has held, "speculative and unsubstantiated claim[s] of harm to a plaintiff's reputational or economic interests [are] typically insufficient to justify proceeding anonymously."  *Doe v. U.S. Dep't of Justice*, No. CV 23-1467 (JEB), 2023 WL 3883939, at *3

(D.D.C. June 1, 2023) ("*Doe v. DOJ*") (citation and internal quotation marks omitted, and alterations accepted), *aff'd*, No. 23-5127, 2023 WL 7268249 (D.C. Cir. Oct. 31, 2023).  Doe makes just such a claim here.  His Complaint alleges that the Board has not "questioned the quality of [his] underlying audit work," but instead brought charges related to his "fail[ure] to cooperate with the Board's inspection and investigation of a component audit."  Compl. ¶ 54.  Doe's motion does not present any explanation of why public revelation that the Board has brought (as yet unadjudicated) charges that he "failed to cooperate" with a Board investigation will be a death knell for his career.  *Id.*  As in *Doe v. DOJ*, unsubstantiated insistence that "rational employers will refuse to hire" Doe if his identity is made public does not warrant departure from the ordinary rule of transparency.  *Doe v. DOJ*, 2023 WL 3883939, at *2 (citation omitted).

Indeed, courts in this district regularly hold that this first factor weighs against pseudonym status in cases involving disclosures that would have far more obvious and striking professional implications than here.  For example, courts in this district have held that the first factor weighs in favor of disclosure even where plaintiffs raised concerns about potential professional consequences from the disclosure of a prior felony conviction, a doctor's allegedly fraudulent inclusion on a national database for medical misconduct reports, and alleged wrongful discipline by a federal employer.  *See McKernan*, 2024 WL 1143932, at *2 (prior convictions); *Doe v. Rogers*, No. CV 12-01229 (TFH), 2023 WL 1470007, at *2 (D.D.C. Feb. 2, 2023) (National Practitioner Data Bank ("NPDB") report); *Doe v. Garland*, No. 1:21-MC-00044 (BAH), 2021 WL 3622425, at *1 (D.D.C. Apr. 28, 2021) (AUSA discipline).  Even highly sensitive and professionally consequential litigation over security clearances and related sensitive employment information typically takes place in this district without anonymizing complaints.  *See Doe v. DOJ*, 2023 WL 3883939, at *2.  Significantly, cases often find this factor favors disclosure even though

the information the plaintiff seeks to keep private is at the center of the case—and thus will feature prominently in any subsequent discovery or judicial determination.  *See Rogers*, 2023 WL 1470007, at *2; *Doe v. Garland*, 2021 WL 3622425, at *1.  That is not true here, where adjudicating Doe's claims will implicate only the *Board's* conduct and structure and thus poses no risk of amplifying any asserted harms to Doe.

Ignoring that authority, Doe relies solely on *Doe v. Lieberman*, No. 1:20-CV-02148 (BAH), 2020 WL 13260569 (D.D.C. Aug. 5, 2020) ("*Lieberman I*"), but that case is readily distinguishable.  In *Lieberman I*, the Department of Veterans Affairs ("VA") terminated the plaintiff heart surgeon's employment following a "charge of unprofessional conduct" stemming from complaints of "substandard performance during hospital procedures."  *Id.* at *1 (citation omitted).  The plaintiff appealed that charge to the VA's appeals board, which upheld the charge after a multi-day hearing.  *Id.*  Doe has not identified any similar definitive and specific finding of wrongdoing.  Again, revealing Doe's identity would make public only that he is alleged to have "failed to cooperate with the Board's inspection and investigation."  Compl. ¶ 54.  That "vague" revelation is a far cry from the concrete misconduct at issue in *Lieberman*.  *Doe v. DOJ*, 2023 WL 3883939, at *2 (distinguishing *Lieberman I* in case where revealing the plaintiff's identity "would at most imply that the FBI may have found that she was dishonest about some unidentified past activity" and plaintiff had not shown that "other employers" would find "FBI's vague statement alone as disqualifying").

Moreover, the plaintiff in *Lieberman I* sued to enjoin the defendants from, *inter alia*, filing an adverse report of her unprofessional conduct and substandard performance with the NPDB and the Colorado Medical Board.  2020 WL 13260569, at *1.  Requiring the *Lieberman I* plaintiff to proceed publicly would have made public the very information she sued to keep private, essentially

denying her the ability to seek meaningful relief. *See id.* at *3. By contrast, courts have held this first factor weighs in favor of disclosure where revealing the information would not prevent effective relief, even when the information at issue is potentially sensitive. *See, e.g.*, *Doe v. Dep't of Army*, No. 1:21-MC-00114 (BAH), 2021 WL 4260393, *1, *3 (D.D.C. Sept. 14, 2021) (holding, in case where Army doctor sought to remove "record of alleged substandard performance" from personnel file, that "professional reputational interest" did not support anonymity).[1] Here, requiring Doe to proceed publicly does not deprive him of the ability to receive meaningful relief from the court; the court can still enjoin the Board's disciplinary process even if Doe proceeds under his real name.

At bottom, Doe appears to embrace the sweeping and novel theory that any plaintiff who seeks to challenge an otherwise confidential proceeding with implications for future employment must be allowed to proceed under a pseudonym. That is plainly not the law. Countless federal cases involve personnel "findings of unprofessionalism, incompetence, misconduct, and worse" that are "no doubt harmful in some respects to each plaintiff's professional reputation and future job prospects." *Doe v. Lieberman*, No. 20-CV-2148 (CRC), 2022 WL 3700905, at *4 (D.D.C. Aug. 26, 2022) ("*Lieberman II*") (subsequent decision to *Lieberman I*, expressing reservation about continuing Doe status). But "transparency is the norm in judicial proceedings" and is therefore "a price plaintiffs pay for their day in court." *Id.* There is "no reason to treat Doe differently just because [he] is a[n]" accountant. *Id.*

---

[1] Indeed, in *Doe v. Lieberman*, No. 22-5221, 2022 WL 4389332 (D.C. Cir. Sept. 20, 2022), after the district court ruled for the defendants on the merits, the D.C. Circuit denied the plaintiff's request to proceed under a pseudonym on appeal. *See id.* at *1. The court of appeals had denied a stay pending appeal and reasoned that, because there would be a report to the NPDB, plaintiff's "privacy interest . . . is substantially diminished." *Id.*

2.      *Factors Two and Three:  Disclosure of Doe's Identity Poses No Risk of Retaliatory Harm and Doe Is an Adult.*

Doe concedes that the second and third factors do not support his bid for anonymity.  Mot. 5.  As Doe admits, he faces no risk of retaliation of any kind if he proceeds under his real name (factor two), and because he is an adult this case does not implicate minors' privacy interests (factor three).  *See id.*

But Doe is wrong that these factors therefore are merely "not applicable."  Mot. 5.  As this Court has held, where there is no risk of retaliation and no party is a minor, "[t]he second and third factors add further weight to the scale supporting disclosure."  *Doe v. DOJ*, 2023 WL 3883939, at *3; *see also McKernan*, 2024 WL 1143932, at *3 (explaining that the third factor made the "tide begin[] to turn back" toward disclosure where the "case does not implicate the privacy interests of any minors"); *Doe v. Lynch*, No. CV 16-253 (BAH), 2016 WL 10844617, at *1 (D.D.C. Apr. 28, 2016) (cited at Mot. 5) (second and third factors were "inapplicable *and in favor of disclosure*" (emphasis added)).  Although Doe attempts to minimize these factors, his admitted failure to satisfy them weighs significantly against his request to proceed under a pseudonym.

3.      *Factor Four:  Doe's Constitutional Challenge to Federal Statutes Triggers a Particularly Heightened Public Interest in Disclosure.*

Doe and the Board agree that the Board is "'part of the Government' for constitutional purposes."  Mot. 5 (quoting *Free Enter. Fund v. PCAOB*, 561 U.S. 477, 486 (2010)).  Doe errs, however, in saying that the Board's governmental status makes the fourth factor favor anonymity.  As the D.C. Circuit has recognized, "there is a heightened public interest when an individual or entity files a suit against the government," and this interest "is intensified" when a plaintiff "seeks to alter the operation of public law both as applied to it and, by virtue of the legal arguments presented, to other parties going forward."  *In re Sealed Case*, 971 F.3d at 329.  This "'heightened public interest' . . . often controls the final disposition of [the fourth] factor," particularly when a

litigant "mount[s] a constitutional challenge to [a] statute." *McKernan*, 2024 WL 1143932, at *3 (citation omitted).

Here, that heightened public interest weighs heavily in favor of disclosure.  Doe's claims clearly seek to "alter the operation of public law . . . as applied to" him.  *In re Sealed Case*, 971 F.3d at 329.  He seeks a declaratory judgment "that the Board's disciplinary proceedings against [him] are unlawful and unconstitutional" and he requests that the Court enjoin the Board's proceedings against him on the same basis.  Compl. at 30, Relief Requested ¶¶ (i)-(ii).  And because Doe's allegations are about the Board's structure and operation generally, not about anything specific to the enforcement proceedings against him, his suit, if successful, could alter the Board's authority to bring enforcement actions against "other parties going forward."  *In re Sealed Case*, 971 F.3d at 329; *see* Compl. ¶ 53 (alleging that Doe's experience "is not atypical").  As courts in this district have repeatedly recognized, there is a strong public interest in transparency in suits, like this one, that raise broad challenges to the constitutionality of federal statutes.  *See, e.g.*, *McKernan*, 2024 WL 1143932, at *3 (fourth factor favored disclosure where plaintiff raised Fifth Amendment and statutory challenge to federal statute banning the federal government from hiring individuals with felony convictions).

Doe thus gets things backwards in arguing that his identity is not "of any particular interest to the public at large" because he "is raising purely legal and constitutional objections" that are equally applicable to any "accused respondent in a Board disciplinary proceeding."  Mot. 10.[2]  If Doe were raising claims unique to *him*, that might decrease the public's interest in the proceeding. *See, e.g.*, *Doe v. Fed. Republic of Germany*, 680 F. Supp. 3d 1, 6 (D.D.C. 2023) (fourth factor

---

[2] Doe's motion includes a separate Part III that appears to repeat arguments about the fourth and fifth factors.  *See* Mot. 9-10.  This opposition accordingly addresses these arguments in this section.

neutral where "Plaintiff's tort lawsuit 'seeks to vindicate only his own rights'" (citation omitted and alteration accepted)); *K.J. v. United States*, No. 1:22-CV-00180 (BAH), 2022 WL 22624608, at *4 (D.D.C. Jan. 23, 2022) (fourth factor weighed only "slightly" in favor of disclosure where suit would not alter "public law . . . to other parties going forward" as plaintiffs sought "compensation for injuries they allegedly suffered from defendant's negligence" (citation omitted)). But, as Doe concedes, his is not such a suit. *See* Mot. 10 ("the only relevant fact about Plaintiff is that he, like hundreds of other accountants before him and sure to follow him, is an accused respondent in a Board disciplinary proceeding"). Precisely because Doe is raising "broad legal claims" that, if successful, may have direct consequences not just for Doe, but for all others who might interact with the Board, this factor "weighs in favor of disclosure." *M.A. v. Mayorkas*, No. CV 23-1843 (JEB), 2023 WL 5321924, at *3 (D.D.C. July 6, 2023); *see also Sponsor v. Mayorkas*, No. CV 23-712 (JEB), 2023 WL 2598685, at *2 (D.D.C. Mar. 22, 2023) (holding fourth factor favored disclosure because "although the suit challenges the denial of a specific set of parole applications, it implicates the more broadly applicable Administrative Procedure Act and the Fourteenth Amendment to the United States Constitution").

Again, the few cases (Mot. 5-6) on which Doe relies bear no resemblance to his suit. In *John Doe Co. No. 1 v. Consumer Financial Protection Bureau*, the plaintiffs sued to enjoin the CFPB from interviewing their prior attorney without their current attorney present to protect attorney-client privilege. 195 F. Supp. 3d 9, 12 (D.D.C. 2016). Those plaintiffs raised a fact-specific dispute—alleging that the CFPB had failed to follow its own regulations and acted arbitrarily and capriciously—that, unlike Doe's challenge here, would not have significant implications for other regulated parties. *See* Compl. ¶¶ 50-61, *John Doe Co. No. 1 v. Consumer Fin. Prot. Bureau*, No. 1:15-cv-01177-RDM (D.D.C. Oct. 1, 2015), ECF No. 15-1. *National*

*Association of Waterfront Employers v. Chao* is even further afield, as that case merely recited the general five-factor test for pseudonymity in evaluating a challenge to a Department of Labor policy keeping certain workers compensation claimants' identities private. *See* 587 F. Supp. 2d 90, 95, 99 & n.9 (D.D.C. 2008).

Given the strong public interest in public access to suits of potentially significant public consequence, the fourth factor weighs decidedly against Doe.

    4.    *Factor Five:  Although Doe's Anonymity Would Not Prejudice the Board, That Alone Cannot Entitle Him to Proceed Anonymously.*

The Board agrees with Doe that, because the Board is aware of Doe's identity, the fifth factor supports Doe's motion. *See* Mot. 5-6, 9-10.  But the D.C. Circuit has made clear that the fifth factor alone cannot tip the scales in favor of anonymity. *See In re Sealed Case*, 971 F.3d at 326 n.1 (denying pseudonym status where defendants knew the plaintiff's identity but all other factors weighed in favor of disclosure).  Accordingly, courts in this district regularly deny motions to proceed under a pseudonym where the defendant knows the plaintiff's identity. *See, e.g.*, *Doe v. DOJ*, 2023 WL 3883939, at *3-4; *Doe v. Garland*, 2021 WL 3622425, at *3.  Indeed, courts often deny pseudonymity requests even where the defendant knows the plaintiff's identity and there is another factor that favors pseudonym status. *See, e.g.*, *Doe v. DOJ*, 2023 WL 3883939, at *4 (denying pseudonym motion where fourth and fifth factors supported motion); *McKernan*, 2024 WL 1143932, at *3 (denying pseudonym motion where second and fifth factors supported motion).

Doe's poor showing on the first four factors dooms his motion.  The fifth factor does not and cannot rescue his request for anonymity.

**B.**    **Doe's Other Arguments Are Meritless.**

Perhaps recognizing that the five-factor test weighs strongly in favor of disclosure, Doe argues that he should nonetheless prevail.  First, he tries to leverage the statutory confidentiality

of Board proceedings into confidentiality for this federal suit.  But the statute on which he relies says nothing about retaining confidentiality outside of Board proceedings, meaning the ordinary rule of open access to judicial proceedings prevails.  Second, he argues that denying his motion will have a chilling effect on future litigants.  That risk is already addressed through the ordinary balancing test, and his vague assertions that other parties may not sue fall far short of identifying any actual chilling effect.

1.   *The Nonpublic Nature of Board Proceedings Does Not Entitle Doe to Pseudonym Status in Federal Litigation.*

The Sarbanes-Oxley Act provides for confidentiality during Board proceedings but provides no similar express protection for Doe's name during federal court litigation that he brought to collaterally attack those proceedings.  Doe identifies two statutory provisions providing for confidentiality at the Board:  the first provides that Board hearings are generally confidential, 15 U.S.C. § 7215(c)(2), and the second provides that Board documents, information, and deliberations are confidential "unless and until," *inter alia*, "presented in connection with a public proceeding," 15 U.S.C. § 7215(b)(5)(A).  Neither says anything about shielding a regulated entity's identity in federal judicial proceedings instituted by that regulated entity.

If anything, the latter provision supports the *Board's* position.  Courts have interpreted Section 7215(b)(5)(A) as providing a privilege that allows the Board or other entities holding materials covered by the statute to refuse to disclose those materials.  *See, e.g.*, *SEC v. Goldstone*, 301 F.R.D. 593, 670-72 (D.N.M. 2014); *Bennett v. Sprint Nextel Corp.*, No. 11-9014-MC-W-ODS, 2012 WL 4829312, at *2-3 (W.D. Mo. Oct. 10, 2012).  However, the statute removes that privilege where materials are "presented in connection with a public proceeding," 15 U.S.C. § 7215(b)(5)(A), and it allows the Board and others who hold such materials to "present the materials in federal or state court cases or administrative hearings." *Goldstone*, 301 F.R.D. at 672.

13

That provision thus supports making Doe's identity public in this public proceeding in which the Board opposes Doe's motion to proceed under a pseudonym—*i.e.*, in this "public proceeding" in which the Board seeks to "present" Doe's name.

Other statutory provisions confirm that Doe is not statutorily entitled to confidentiality in this Court. As Doe elsewhere acknowledges (Mot. 8), the confidentiality enjoyed in a Board proceeding does not even extend to subsequent review by the Commission. *See In re Kabani & Co.*, SEC Release No. 34-76266, 2015 WL 6447449, at *1 (Oct. 26, 2015) ("Commission review proceedings of PCAOB disciplinary actions are public proceedings."). Similarly, the statutory provision permitting judicial review of the Commission's actions does not remotely suggest that parties seeking such review have a greater entitlement to proceed under a pseudonym than in any other case. *See* 15 U.S.C. § 78y(a).

Absent Congress expressly addressing the issue, it is the ordinary balancing test addressed above that determines whether Doe should be permitted to proceed under a pseudonym. As the D.C. Circuit has explained, where a statute does not address confidentiality during judicial proceedings, it is appropriate to "assume that Congress [did] not . . . overturn[] the longstanding presumption favoring judicial transparency" and to apply the ordinary balancing test for assessing sealing questions. *Metlife, Inc. v. Fin. Stability Oversight Council*, 865 F.3d 661, 669, 674 (D.C. Cir. 2017) (applying multi-factor test applicable to sealing judicial records). Applying the five-factor pseudonymity test, courts in this district regularly deny plaintiffs the ability to proceed under a pseudonym even where a federal statute protects their confidentiality in other contexts. For example, in *Doe v. DOJ*, this Court rejected plaintiff's argument that she should be permitted to proceed pseudonymously because the Privacy Act and FOIA prohibited the government from disclosing to third parties the information she sought to keep private by proceeding anonymously.

14

2023 WL 3883939, at *4. Likewise, in *Doe v. Garland*, the court required the plaintiff to proceed publicly in a case that would reveal information about her employment and disciplinary records, *see* 2021 WL 3622425, at *1, which federal law insulates from disclosure in other contexts, *see, e.g.*, 5 U.S.C. § 552(b)(6) (authorizing agencies to withhold personnel "and similar files" when responding to FOIA requests).

The only case Doe cites—*Doe v. Massachusetts Institute of Technology*, 46 F.4th 61 (1st Cir. 2022) ("*MIT I*")—simply serves to highlight how thin his statutory argument is. To start, *MIT I* involved the far more detailed and comprehensive statutory confidentiality regime under the Family Educational Rights and Privacy Act of 1974 ("FERPA"), a statute specifically designed to protect "sensitive information about students." *MIT I*, 46 F.4th at 74 (citation omitted); *see also* 20 U.S.C. § 1232g(b)(1) (identifying specific circumstances in which information could be disclosed, but not listing civil litigation). Doe makes no effort to analogize the Board confidentiality provisions to those at issue in *MIT I*. More to the point, however, the First Circuit in *MIT I* did not decide whether to grant the plaintiff pseudonym status, instead remanding to the district court to resolve the issue in the first instance. *See* 46 F.4th at 76-77. And, on remand, the district court *rejected* the argument that even those far more stringent FERPA confidentiality provisions supported pseudonym status. *See Doe v. Massachusetts Inst. of Tech.*, No. CV 21-12060 (RGS), 2022 WL 16554725, at *1 (D. Mass. Oct. 31, 2022) ("*MIT II*").[3] Doe fails to identify a single case permitting pseudonym status on the basis of statutes requiring confidentiality

---

[3] On remand, the district court permitted the *MIT* plaintiff—who alleged that he had been wrongfully disciplined for sexual assault—to proceed under a pseudonym on the separate basis that doing so would protect the "innocent non-party" "Jane Roe" whom the plaintiff had allegedly assaulted. *MIT II*, 2022 WL 16554725, at *2.

in non-judicial contexts—much less a case permitting that status on the basis of statutes bearing any resemblance to the Sarbanes-Oxley provision on which he relies.

        2.     *Doe's Unsubstantiated Concern About a Chilling Effect Does Not Warrant Pseudonym Status.*

Doe's final argument is that public disclosure of his name would create a "chilling effect on future litigants." Mot. 7 (quoting *MIT I*, 46 F.4th at 71). Doe is correct that courts sometimes consider whether there is a risk of a chilling effect in deciding whether to grant a pseudonym motion. But, as the *MIT I* decision on which Doe relies explains, that chilling effect "typically arises in cases involving 'intimate issues such as sexual activities, reproductive rights, bodily autonomy, medical concerns, or the identity of abused minors.'" *MIT I*, 46 F.4th at 71 (quoting *In re Sealed Case*, 971 F.3d at 327). In other words, the first factor's consideration of whether a case implicates a "matter of a sensitive and highly personal nature" already captures the risk of any chilling effect. *In re Sealed Case*, 971 F.3d at 326 (citation omitted and alteration accepted); *see also Doe v. DOJ*, 2023 WL 3883939, at *3 (addressing alleged chilling effect in analysis of first factor). As explained, that first factor weighs in favor of disclosure here because Doe's argument turns on an unsubstantiated claim of reputational damage. *See* pp. 5-8, *supra*. The same is true under Doe's repackaged chilling-effect argument: Doe provides only speculative and undeveloped assertions that other plaintiffs would not sue the Board if they had to proceed publicly, *see* Mot. 7-9, which are "insufficient to justify proceeding anonymously," *Doe v. DOJ*, 2023 WL 3883939, at *3 (citation omitted).[4]

---

[4] Doe does offer various statistics about the number of Board adjudications and appeals. *See* Mot. 8. But he offers those statistics to support his (incorrect, but also irrelevant) argument that the ordinary appellate process is not a meaningful mechanism for challenging the Board's constitutionality. *See id.* Those statistics do not address whether would-be plaintiffs will be deterred from filing suit by having their identities made public.

Doe's argument also sweeps far too broadly.  Even if Doe were correct that the liberal availability of pseudonym status would "incentivize more Board-accused accountants" to bring similar suits, Mot. 9, that cannot possibly be enough to "tip the balance heavily in favor of allowing pseudonymity," *id.*, because it would make just about any plaintiff entitled to pseudonym status. Federal litigation "frequently invade[s] customary notions of privacy and—in the bargain—threaten[s] parties' reputations." *MIT I*, 46 F.4th at 70; *see also Lieberman II*, 2022 WL 3700905, at *4 (noting "findings of unprofessionalism, incompetence, misconduct, and worse" that often arise in federal court litigation).  "Because parties seek anonymity precisely to avoid such harm," allowing a chilling effect—however slight—to favor pseudonym status could "swallow the rule," even though the law is clear that "litigation by pseudonym should occur only in 'exceptional cases.'"  *MIT II*, 2022 WL 16554725, at *1 n.1 (quoting *MIT I*, 46 F.4th at 70) (alteration accepted).[5]  Because this is not an exceptional case, the Court should deny Doe's motion.

---

[5] On remand from the First Circuit, the *MIT* district court held that the plaintiff's chilling-effect argument—like his statutory confidentiality argument—did not warrant pseudonym status. *See MIT II*, 2022 WL 16554725, at *1.

## CONCLUSION

For the foregoing reasons, Defendant respectfully requests that the Court deny Doe's Motion to Litigate This Case Pseudonymously.


Dated: June 7, 2024                    Respectfully submitted,

                                       */s/ Donald B. Verrilli, Jr.*

Jeffrey A. Lamken                      Donald B. Verrilli, Jr.
Robert K. Kry                          Elaine J. Goldenberg
**MOLOLAMKEN LLP**                     Ginger D. Anders
600 New Hampshire Ave., NW, Suite 500  Rachel G. Miller-Ziegler
Washington, DC 20037                   **MUNGER, TOLLES & OLSON LLP**
Telephone: (202) 556-2000              601 Massachusetts Ave., NW, Suite 500E
jlamken@mololamken.com                 Washington, DC 20001
                                       Telephone: (202) 220-1100
                                       donald.verrilli@mto.com

*Counsel for Defendant Public Company Accounting Oversight Board*

18

**CERTIFICATE OF SERVICE**

I hereby certify that on June 7, 2024, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of this filing to the attorneys of record.

Respectfully submitted,

*/s/ Donald B. Verrilli, Jr.*
Donald B. Verrilli, Jr.
**MUNGER, TOLLES & OLSON LLP**
601 Massachusetts Ave., NW, Suite 500E
Washington, DC 20001
Telephone: (202) 220-1100
donald.verrilli@mto.com

*Counsel for Defendant Public Company Accounting Oversight Board*

19