IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| JOHN DOE, | : | |
| | : | |
| *Plaintiff*, | : | |
| | : | |
| v. | : | Civil Action No. 1:24-CV-780 |
| | : | |
| PUBLIC COMPANY ACCOUNTING | : | |
| OVERSIGHT BOARD, | : | |
| | : | |
| *Defendant*. | : | |
| | : | |

**PLAINTIFF'S REPLY MEMORANDUM OF POINTS AND AUTHORITIES
IN FURTHER SUPPORT OF MOTION TO LITIGATE PSEUDONYMOUSLY**

Defendant Public Company Accounting Oversight Board (the "Board") opposes pseudonymity, and the irony is striking.  Since its creation some 22 years ago, the Board has operated more secretively and less transparently than just about any other federal regulator in modern U.S. history.  The vast majority of the Board's regulatory operations—performed by nearly 1,000 private citizens endowed in recent years with annual budgets exceeding $300 million—is concealed from public view, including nearly all of the enforcement and disciplinary machinations complained of in this case.  Indeed, in any enforcement case where the Board, for whatever reason, ultimately decides not to impose any sanction, the entire matter remains forever hidden from public view—including Board's legal analysis, its reasons for declining to impose sanctions, and any preliminary or procedural rulings in the matter made by the Board or its hearing officer.  The Board's budget and spending are also abstruse; while agencies like the Securities and Exchange Commission publish and submit to Congress hundreds of pages of explanations each year to justify their budgets and their spending, the Board publishes only a four-page summary that is neither submitted to nor publicly scrutinized by Congress.  *See*, *e.g.*, PCAOB 2024 Budget, *available at*

https://assets.pcaobus.org/pcaob-dev/docs/default-source/about/administration/documents/fiscal
_year_budgets/2024-budget.pdf?sfvrsn=58406b25_4.

       As a nominally private corporation, moreover, the Board is seemingly exempt from laws
that would ordinarily shine public sunlight on the operations of a powerful federal regulator.  For
example, the Board claims to be exempt from the Administrative Procedure Act, the Freedom of
Information Act, the Sunshine Act, the Privacy Act, the OPEN Government Data Act, the
Paperwork Reduction Act, and countless other laws and regulations that ordinarily allow the public
to keep watch over governmental regulators.  *See, e.g.,* Board Member J. Robert Brown Jr.,
"PCAOB 3.0: The Evolving Role of Investor Protection at the PCAOB" (Nov. 6, 2020 speech)
(the Board has "has struggled with transparency, having been described as 'completely opaque;'"
the Board is not prohibited from being much more transparent but "has, for the most part, chosen
not to do so" (citations omitted)); Board Member J. Robert Brown Jr., "Grading the PCAOB:
Transparency, Accountability and Investor Protection" (Sept. 17, 2019 speech) (noting that "the
legal regime designed to ensure transparency and facilitate accountability across federal agencies
simply doesn't apply to us").

       Yet now, in this case, the Board paradoxically urges full (and entirely gratuitous)
transparency when, for the first time ever, one of its enforcement targets has the temerity to ask a
federal court to scrutinize the constitutionality of the Board's secret enforcement and disciplinary
processes.  The Board proffers no conceivable reason why the public would (or should) have any
interest in knowing Plaintiff's name, which is the only speck of information Plaintiff asks to keep
nonpublic as he otherwise litigates this case in full public view.  The Board's demand that Plaintiff
gratuitously "out" himself as a precondition to challenging the Board is a transparent, *in terrorem*

tactic designed to deter him—and others—from seeking judicial relief to protect their constitutional rights, and the Court should reject it.

As the Board concedes, the sole focus of this case is on the legality of *the Board's* structure and processes.  And contrary to the Board's insinuation, Plaintiff does *not* ask that this case be sealed or otherwise litigated out of public view.  Plaintiff filed and intends to litigate this case in full public view just like any other case, asking simply that it be litigated pseudonymously so that his identity—and with it, his good reputation and career prospects that hang by a thread—can be protected while the Court decides the case.  Such pseudonymity is warranted here and is entirely consistent with precedent and the statutory intent expressed by Congress when it created the Board.  At a minimum, the Court should allow pseudonymity to continue until such time, if any, that a genuine need to reveal Plaintiff's identity should emerge.[1]

## ARGUMENT

At bottom, allowing Plaintiff to proceed pseudonymously protects Plaintiff's privacy, facilitates the vindication of important constitutional rights, imposes no unfair prejudice on the Board, and honors legislative intent, all while allowing the public full access to the record that will be developed in this case.[2]

---

[1] The case has already proceeded pseudonymously, without incident or difficulty, for more than a year, including the entire time it was pending in the Northern District of Texas.

[2] The appropriateness of pseudonymity—at least for now—became even stronger with the Supreme Court's recent decision in *SEC v. Jarkesy*, No. 22-859 (June 27, 2024), which held that an administrative enforcement proceeding in which the Securities and Exchange Commission imposed civil monetary penalties and other relief, including industry bars—the same types of relief sought by the Board in its non-jury disciplinary proceeding against Plaintiff—unconstitutionally deprived the respondents of their Seventh Amendment right to trial by jury.  While the present motion is not the appropriate venue to brief the impact of *Jarkesy* on Plaintiff's nearly identical Seventh Amendment challenge here, Plaintiff respectfully suggests that the likelihood of ultimate success on that claim, which would presumably require the Board to dismiss its pending disciplinary proceeding against Plaintiff without it ever becoming public, strongly favors allowing Plaintiff to litigate this case pseudonymously.

The parties agree on much of what is at issue in this motion.  They agree that there is a strong presumption that party names should be public, but that exceptions exist.  They agree that the Board should be treated like a governmental defendant for purposes of this motion and that Plaintiff is not a minor.  They agree that this case is solely about the constitutionality of the Board's enforcement and disciplinary processes, and that the Board already knows Plaintiff's identity and thus would suffer no prejudice from allowing him to litigate the case pseudonymously.  They also agree that D.C. Circuit precedent instructs courts to focus primarily on five factors when evaluating requests for pseudonymity, but that those factors are not exhaustive and should be evaluated flexibly.  *In re Sealed Case*, 971 F.3d 324, 326 (D.C. Cir. 2020) (citing *In re Sealed Case*, 931 F.3d 92, 97 (D.C. Cir. 2019)); *see also Doe v. Garland*, No. 1:21-MC-00044, 2021 WL 3622425, at *2 (D.D.C. Apr. 28, 2021) ("a court must not simply engage in a wooden exercise of ticking the five boxes").

The Board also appears to acknowledge that a relevant additional factor for consideration here is that Congress legislated strong (and uncommon) confidentiality provisions in the Sarbanes-Oxley Act that require Board disciplinary hearings to remain nonpublic (unless the respondent consents to a public hearing) and generally prohibit public disclosure of information related to those proceedings, unless and until a final sanction is imposed against the respondent.  *See generally*, 15 U.S.C. § 7215(b)(5), (c)(2), (d).[3]  The Board disputes how much weight to give these statutory confidentiality mandates.

---

[3] The Board itself has also promulgated rules that similarly require strict confidentiality of its proceedings.  *See, e.g.*, Board Rule 5108 (confidentiality of investigatory records); Board Rule 5440 (forbidding purchase of hearing transcript by a nonparty to the proceeding); Board Ethics Code § EC5 (Board members and staff may not "disseminate or otherwise disclose any confidential, non-public information obtained by virtue of their position with the Board, regardless of whether that information may be considered to be 'material' under the securities laws"); Board Ethics Code § EC9 (similar).  The Ethics Code also applies to "designated contractors and consultants to the Board").  *See* Board Ethics Code § EC1(c).

We address below why the Board's assessment of factors one, two, and four of the five-factor baseline analysis—and of the additional factor arising from the statutory confidentiality mandates of Sarbanes-Oxley—is mistaken.

I.      **Plaintiff Has a Compelling Privacy Interest in Remaining Anonymous**

Plaintiff reasonably fears that premature public disclosure that the Board has investigated him and charged him with professional wrongdoing would be devastating to his livelihood in his chosen profession.  This fear is credible and neither speculative nor a generic economic concern common to all litigants.  And it is exactly the type of concern that Congress considered when adopting the confidentiality protections of Sarbanes-Oxley.

Unlike the litigants in the cases cited by the Board, Plaintiff's fears arise from the reality that firms in his chosen profession are acutely sensitive to reputational integrity and that Plaintiff's accuser is not just any mill-run accuser but *the primary federal regulator of that very profession*. As explained by a former president and chief executive officer of the American Institute of Certified Public Accountants, "auditors belong to a profession in which a good reputation is essential and publication of unproven charges may end an individual auditor's career or audit firm's existence."  *Accounting and Auditing Oversight: Pending Proposals and Emerging Issues Confronting Regulators, Standard Setters, and the Economy: Hearing Before the Subcomm. on Cap. Mkts. and Gov't Sponsored Enters. of the H. Comm. on Fin. Servs.*, 112th Cong. 155 (2012) (prepared statement of Barry C. Melancon, CPA, President and Chief Executive Officer, American Institute of Certified Public Accountants); *accord* Soyoung Ho, "SEC Chair Gensler Gives Ambiguous Response to Whether PCAOB Disciplinary Proceedings Should be Made Public," Reuters, Aug. 3, 2022 ("The accounting and auditing profession believes that having a good

reputation is crucial.  But when the PCAOB publicly pursues unproven charges, it may end careers or audit firms' existence.").

Plaintiff's fears are comparable to the specific, nonspeculative fears of professional blacklisting that have justified pseudonymity for other plaintiffs challenging governmental action. *See, e.g.*, *Doe v. Lieberman*, No. 1:20-cv-02148, 2020 WL 13260569 (D.D.C. Aug. 5, 2020) (doctor's fear that unproven charge of professional misconduct would be recorded in a database accessible to prospective future employers and others in her chosen healthcare profession);[4] *Doe v. Benoit*, No. 1:19-cv-01253, 2019 WL 13079193 (D.D.C. Apr. 30, 2019) (attorney's fear that being falsely labeled an "insider threat" would brand her in the eyes of prospective employers in the national security field "as a likely terrorist, … and at best, as a troublemaker"); *Doe v. Merrill Lynch*, No. 16-253, 2016 WL 10844617 (D.D.C. Apr. 28, 2016) (financial professional's fear that revelation of the defendant bank's prior actions might insinuate money laundering and terrorism, jeopardizing plaintiff's board memberships with other entities).  They are far more specific and concrete than the more generic and speculative fears asserted in the cases cited by the Board.  *See, e.g.*, *Doe v. McKernan*, No. 24-488, 2024 WL 1143932, at *2 (D.D.C. Feb. 23, 2024) (distinguishing *Benoit*).

Applied in the flexible manner dictated by D.C. Circuit precedent, this first factor weighs in favor of pseudonymity.

---

[4] The Board notes that on appeal, after the *Lieberman* case was litigated pseudonymously for two years through its conclusion in the district court, the D.C. Circuit denied continuation of pseudonymity on appeal because the combined result of the district court judgment and the D.C. Circuit's denial of a stay pending appeal meant that the plaintiff's identity would be reported to the database, thereby "substantially diminish[ing]" her privacy interest in pseudonymity going forward.  *Doe v. Lieberman*, No. 22-5221, 2022 WL 4389332 (D.C. Cir. Sept. 20, 2022).  No similar circumstances exist here.

## II.     The Board's Quasi-Governmental Status Strongly Favors Pseudonymity

The Board's insistence that the case for pseudonymity is *weakened* by the Board's status as a quasi-governmental entity turns things completely upside-down.   *See* Opp. at 9–12. Pseudonymity is *more* appropriate—not less so—when an individual challenges unlawful governmental action, due to the absence of any concern about the governmental defendant's reputation or ability to defend itself, the typical absence of any plausible public interest in knowing the name of the challenger, and the strong public interest in incentivizing private citizens to challenge unlawful government conduct.   A recent decision by the U.S. District Court for the Southern District of Texas in a similar case against the Board got this point exactly right:

> The fact that PCAOB operates under Congressional authority also weighs *in favor of* granting pseudonymity, because John Doe Corporation is challenging what is essentially government action, a factor weighing *in favor of* pseudonymity under *Southern Methodist Univ. Assoc. of Women Law Students*. [599 F.2d 707 (5th Cir. 1979)].

*Doe v. PCAOB*, No. H-24-1103, ECF Docket Entry No. 7 (Memorandum and Order dated June 10, 2024) (emphasis added).[5]

UCLA Law Professor Eugene Volokh recently made the same point in an exhaustively researched survey of the law regarding pseudonymous litigation:

> The presumption against pseudonymity may be weakened when, "because of the purely legal nature of the issues presented or otherwise, there is an atypically weak public interest in knowing the litigant's identities."  This is particularly likely in facial challenges to government actions, where the litigant's identity is generally not important to analyzing the substantive questions (though it might bear on ancillary matters, such as the litigant's standing to bring the challenge).
> … .
> … Perhaps the better inquiry would be not into whether the defendant is a government entity, but into whether the plaintiff is challenging government action

---

[5] The Board alerted the Court to this decision in a notice of supplemental authority filed on June 18, 2024 (ECF Docket No. 73), suggesting the decision supports the Board's opposition to pseudonymity here.  But the court actually *allowed* pseudonymity in that case to continue pending further developments in the case.  The case for pseudonymity is even stronger here because, among other things, Plaintiff is a natural person, not a corporation.

as a matter of law without regard to the factual details related to the plaintiff …;
such a purely legal challenge indeed makes the plaintiff's identity less important.

Eugene Volokh, *The Law of Pseudonymous Litigation*, 73 HASTINGS L.J. 1353, 1378, 1393 (2022) (emphasis added and citations omitted).  The instant case challenging the Board's enforcement structure and processes exactly fits the paradigm Professor Volokh contemplates as favoring pseudonymity.

Inverting this commonsense reasoning, the Board argues that its quasi-governmental status weighs against pseudonymity because a decision favorable to Plaintiff could theoretically impact unrelated cases involving nonparties to this litigation.  But such speculation is exaggerated, and in any event is no different than the potential downstream impact of any litigation in which the court's decision on a pure issue of law might establish legal precedent that nonparties could later cite in their favor in similar cases.

Plaintiff is not seeking a nationwide injunction or sweeping declaratory judgment that would strike down Sarbanes-Oxley or any Board rule promulgated thereunder.  To the contrary, as pleaded in his Complaint, the principal relief Plaintiff seeks is "[a]n injunction prohibiting the Board from continuing its unlawful and unconstitutional disciplinary proceedings *against Plaintiff*" and "[a] declaratory judgment, pursuant to 28 U.S.C. § 2201(a), declaring that the Board's disciplinary proceedings *against Plaintiff* are unlawful."  Complaint, ECF Docket No. 1, at 30 (filed Jan. 19, 2023) (emphasis added).  Even if the Court granted both remedies to protect Plaintiff in this particular case, the judgment would not directly impact any other cases on the Board's enforcement docket.  Indeed, the Board would be free to continue unimpeded with those cases, and to initiate new ones, unless and until a respondent in one of those cases sought similar judicial relief.

III.    **The Statutory Confidentiality Provisions of Sarbanes-Oxley Strongly Favor Pseudonymity**

Pseudonymity is consistent with the congressional mandate of Sarbanes-Oxley that the identity of accountants charged in Board disciplinary hearings remain confidential unless and until a final sanction order is imposed.  In seeking to minimize the import of this statutory confidentiality mandate, the Board claims that it was legislated not to protect accountants' reputations but merely to endow the Board with the purported "privilege" of refusing to disclose its investigative and disciplinary materials.  Opp. at 13.  But that's revisionist history with scant evidentiary support.  The Board cites two cases in which district courts indeed treated the statutory confidentiality mandates as creating a privilege (with one court coining the misnomer "PCAOB Privilege"), but in both cases the privilege was asserted to protect *the accounting firm*—not the Board.  *SEC v. Goldstone*, 301 F.R.D. 593, 670–72 (D.N.M. 2014); *Bennett v. Sprint Nextel Corp.*, No. 11-9014-MC-W-ODS, 2012 WL 4829312, at *2–3 (W.D. Mo. Oct. 10, 2012).  The Board was not a party in either case.

In reality, there can be little doubt that the confidentiality mandate of Sarbanes-Oxley was put there primarily to protect the reputations and livelihoods of accountants, rather than for the convenience of Board staff.  *See*, *e.g.*, Colleen Honigsberg, *The Case for Individual Audit Partner Accountability*, 72 Vanderbilt L. Rev. 1871, 1916–17 (2019) ("Unofficially, congressional staffers say that the explanation for the confidentiality is that the accounting firms have lobbied heavily for its protection.  Bipartisan congressional representatives have proposed to make proceedings public, all to no avail.")  Indeed, the Board has never liked this so-called privilege and has repeatedly urged Congress—over the objections of the accounting industry—to repeal it.  *See*, *e.g.*, Carmen Germain, "Bipartisan Bill would Make PCAOB Proceedings Public," Law360, March 22, 2017 (noting then-Board chairman's support for bill making Board proceedings public);

9

*Accounting and Auditing Oversight: Pending Proposals and Emerging Issues Confronting Regulators, Standard Setters, and the Economy: Hearing Before the Subcomm. on Cap. Mkts. and Gov't Sponsored Enters. of the H. Comm. on Fin. Servs.*, 112th Cong. 97-99 (2012) (prepared statement of then-Board Chairman James Doty urging Congress to make Board disciplinary proceedings public); Press Release, "PCAOB Staff Directed to Develop Proposal to Ask Congress to Make Public Disciplinary Hearings and Related Proceedings, Aug. 5, 2010, available at pcaobus.org/news-events/news-releases/news-release-detail/pcaob-staff-directed-to-develop-proposal-to-ask-congress-to-make-public-disciplinary-hearings-and-related-proceedings_302; Honigsberg, 72 VANDERBILT L. REV. at 1889 ("despite multiple bills by members of Congress and pushes by PCAOB members, PCAOB disciplinary proceedings are currently nonpublic" (citations omitted)).  Yet Congress has repeatedly refused the Board's entreaties in large part because lawmakers credit the rational fears of accounting professionals that the mere hint of pending disciplinary charges against them by their principal federal regulator will instantly inflict severe reputational damage on the person or firm accused.  *See, e.g.*, Soyoung Ho, "SEC Chair Gensler Gives Ambiguous Response to Whether PCAOB Disciplinary Proceedings Should be Made Public," Reuters, Aug. 3, 2022; Soyoung Ho, "Enforcement Staff Supports Legislation to Make PCAOB Disciplinary Proceedings Public," Reuters, June 15, 2022.

The Board's heavy reliance on a single phrase in Sarbanes-Oxley—one that permits public disclosure of otherwise strictly confidential Board proceedings when "presented in connection with a public proceeding," 15 U.S.C. § 7215(b)(5)(A)—is misplaced.  According to the Board, despite having gone to great lengths to protect accountants from premature disclosure of the Board's unproven allegations against them, Congress through this stray "public proceedings" phrase meant to strip away all that protection whenever a pending Board proceeding is relevant to

a judicial proceeding.  But accepting the Board's interpretation of the phrase would require willful disregard of the statutory text that immediately precedes and follows it, *in the same sentence* and in the following subsection.  That surrounding text makes abundantly clear that the "public proceeding" Congress had in mind was either a Board disciplinary proceeding in which all parties had consented to its being conducted in public (*see id*. § 7215(c)(2)) or a statutory appellate review proceeding before SEC that a Board respondent may pursue after the Board completes its otherwise strictly confidential disciplinary proceeding and issues a final sanctions order (*see id*. § 7217(c)).

> The full statutory sentence reads as follows:
>
> Except as provided in subparagraphs (B) and (C), all documents and information prepared or received by or specifically for the Board, and deliberations of the Board and its employees and agents, in connection with an inspection under section 7214 of this title or with an investigation under this section, *shall be confidential and privileged as an evidentiary matter (and shall not be subject to civil discovery or other legal process) in any proceeding in any Federal or State court* or administrative agency, and shall be exempt from disclosure, in the hands of an agency or establishment of the Federal Government, under the Freedom of Information Act (5 U.S.C. [§] 552a), or otherwise, unless and until presented *in connection with a public proceeding or released in accordance with subsection (c)*.

15 U.S.C. § 7215(b)(5)(A) (emphasis added).  And the very next subsection of the statute contemplates a "public" Board proceeding if, but only if, all parties consent.  *Id*. § 7215(c)(2).

The Board's preferred reading of "public proceeding" would render the sentence in which it appears completely circular and self-contradictory.  The Board proposes that—*within the same sentence*—Congress first ensured that confidential Board information would be categorically inadmissible and not even subject to subpoena or other discovery in "any" federal court proceedings (nor subject to FOIA disclosure if possessed by SEC or another federal agency), yet at the same time intended for this confidentiality to evaporate if the information was relevant to a

pending federal court proceeding.  The Court should reject this nonsensical reading of the "public proceeding" exception.

Congress well understood the swift and irreparable damage that premature disclosure of the Board's unproven accusations can inflict on a career auditor like Plaintiff.  Its judgment in this regard should be respected and accorded substantial weight in permitting Plaintiff to litigate pseudonymously while the Board's unproven charges of serious professional wrongdoing remain pending, particularly given the Board's acknowledgement that it will suffer no prejudice if pseudonymity is permitted.

Finally, there is no inconsistency between Plaintiff's request to litigate this case pseudonymously and his complaint that the secrecy of Board disciplinary proceedings violates the Due Process Clause of the Fifth Amendment.  Plaintiff complains that disciplinary proceedings before a Board hearing officer, including the entire pretrial, trial, and post-trial process, is conducted in secret.  The charging document, called an Order Instituting Proceedings, is provided to the respondent, but it is not publicly available, and there is no public docket.  If the hearing officer or the Board issues interlocutory rulings—procedural or substantive, on matters of discovery, evidence, or law, or on standards or burdens—those rulings and their rationale are known only to the parties in that particular proceeding.  Rulings by the Board on appeal from a hearing officer decision are also kept secret unless they impose a final sanction against a respondent.  This means that the Board's enforcement staff, a party in all disciplinary proceedings, has a complete record of all these rulings, but respondent accountants and their counsel do not.  In short, Plaintiff believes that the Board's secrecy creates an unconstitutional playing field, where one party (the prosecutor) knows the governing law and standards while the other party (the accountant) does not.  Plaintiff has never claimed that the names of respondent accountants should

be made public.  And in fact, the current practice of the SEC in releasing its whistleblower awards provides a model of one straightforward potential fix that preserves anonymity without compromising constitutional values: the Board could release the full dockets of its disciplinary proceedings and simply redact identifying information about the respondent.  Likewise, here, the parties can litigate in full public view and simply use a pseudonym for Plaintiff's name.

## CONCLUSION

For these reasons and those in Plaintiff's motion to litigate this case pseudonymously, the Court should allow Plaintiff to continue litigating this case as John Doe.

Dated:  June 28, 2024                    Respectfully submitted,

                                         /s/ *Russell G. Ryan*
                                         Russell G. Ryan (DDC Bar No. 414472)
                                         Casey Norman (*application for admission pending*)
                                         NEW CIVIL LIBERTIES ALLIANCE
                                         1225 19th Street, NW, Suite 450
                                         Washington, DC 20036
                                         (202) 869-5210
                                         russ.ryan@ncla.legal

                                         Ian D. Roffman (*pro hac vice pending*)
                                         Melanie V. Woodward (*pro hac vice pending*)
                                         NUTTER MCCLENNEN & FISH LLP
                                         Seaport West
                                         155 Seaport Blvd.
                                         Boston, MA 02210
                                         (617) 439-2421
                                         iroffman@nutter.com

                                         *Counsel for Plaintiff John Doe*

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that, on June 28, 2024, a copy of the foregoing reply memorandum was served upon all counsel of record through the court's ECF system.

<u>*/s/ Russell G. Ryan*                  </u>