UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **JOHN DOE,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**PUBLIC COMPANY ACCOUNTING OVERSIGHT BOARD,**<br><br>**Defendant.** | **Civil Action No. 24-780 (JEB)** |

**MEMORANDUM OPINION AND ORDER**

Plaintiff John Doe has filed this lawsuit against the Public Company Accounting Oversight Board, raising challenges under Articles I and II of the Constitution, as well as the Fifth and Seventh Amendments. See ECF No. 1 (Complaint), ¶¶ 59–85. PCAOB instituted disciplinary proceedings against Plaintiff, an auditor at an accounting firm, for failure to cooperate with the Board's investigation of an audit. Id., ¶¶ 3, 57. In response, Doe alleges that PCAOB's funding, appointments, and disciplinary process violate the Constitution. Id., ¶¶ 59–85. Concerned that revealing that he is the "subject of the Board's otherwise nonpublic disciplinary process" would render Plaintiff "unable to work in his chosen profession given the resulting stigma," Doe now moves to proceed under a pseudonym. See ECF No. 66 (Motion) at 4. Defendant, which has notice of the case, has opposed. See ECF No. 69 (Opp.). As Plaintiff has not made the detailed showing required to overcome the presumption in favor of disclosure, the Court will deny the Motion. See LCvR 40.7(f) (providing that Chief Judge shall "hear and determine . . . motion[s] to file a pseudonymous complaint").

## I. Legal Standard

Generally, a complaint must identify the plaintiff. See Fed. R. Civ. P. 10(a); LCvR 5.1(c)(1). This identification requirement reflects the "presumption in favor of disclosure [of litigants' identities], which stems from the 'general public interest in the openness of governmental processes,' and, more specifically, from the tradition of open judicial proceedings." In re Sealed Case, 931 F.3d 92, 96 (D.C. Cir. 2019) (quoting Wash. Legal Found. v. U.S. Sent'g Comm'n, 89 F.3d 897, 899 (D.C. Cir. 1996)). A party moving to proceed pseudonymously thus "bears the weighty burden of both demonstrating a concrete need for such secrecy[] and identifying the consequences that would likely befall it if forced to proceed in its own name." In re Sealed Case, 971 F.3d 324, 326 (D.C. Cir. 2020). As a result, the court must "'balance the litigant's legitimate interest in anonymity against countervailing interests in full disclosure'" by applying a "flexible and fact driven" balancing test. Id. (quoting In re Sealed Case, 931 F.3d at 96). That test assesses "five non-exhaustive factors":

> [1] whether the justification asserted by the requesting party is merely to avoid the annoyance and criticism that may attend any litigation or is to preserve privacy in a matter of [a] sensitive and highly personal nature;
>
> [2] whether identification poses a risk of retaliatory physical or mental harm to the requesting party or[,] even more critically, to innocent non-parties;
>
> [3] the ages of the persons whose privacy interests are sought to be protected;
>
> [4] whether the action is against a governmental or private party; and, relatedly,
>
> [5] the risk of unfairness to the opposing party from allowing an action against it to proceed anonymously.

Id. at 326–27 (quoting In re Sealed Case, 931 F.3d at 97) (first alteration in original).

## II. Analysis

Plaintiff has not met his burden to show that his privacy interests outweigh the public's presumptive and substantial interest in learning his identity. The Court will address each of the five factors in turn before moving to Doe's extracurricular arguments.

### A. Factor 1

First, disclosure of Plaintiff's identity will not reveal any information of a "sensitive [or] highly personal nature." Id. at 326 (quoting In re Sealed Case, 931 F.3d at 97). The Complaint reveals no "intimate or sensitive personal information" of the kind "traditionally recognized under this factor, such as sexual activities, reproductive rights, [and] bodily autonomy." Doe v. Rogers, 2023 WL 1470007, at *2 (D.D.C. Feb. 2, 2023) (quoting Doe v. Bogan, 542 F. Supp. 3d 19, 23 (D.D.C. 2021)).

Although the harm Plaintiff alleges does not fall into this category, he nonetheless maintains that he can satisfy Factor 1 because disclosure would threaten his future employment opportunities. These concerns are certainly relevant to the first factor. See Doe v. Lieberman, 2020 WL 13260569, at *3 (D.D.C. Aug. 5, 2020) (weighing whether disclosure of allegations of professional misconduct against plaintiff would limit her ability to practice medicine). But they cannot be mere "speculative and unsubstantiated claims of harm." John Doe Co. No. 1 v. CFPB, 195 F. Supp. 3d 9, 22 (D.D.C. 2016) (citation omitted). To be sure, courts have varied in how much detail they require, and the spectrum is generally as follows: at one end are completely conclusory allegations, which must be rejected. See, e.g., Doe v. Power, No. 23-2637, ECF No. 4, at 3–4 (D.D.C. Sept. 14, 2023) (rejecting as conclusory plaintiff's assertion that "[r]etaliatory actions related to this case have . . . impacted [her] career . . . [and] financial opportunities"). At the other end are detailed declarations supported by the prior experiences of the plaintiffs or

others. See Bird v. Barr, 2019 WL 2870234, at *5 (D.D.C. July 3, 2019) (deeming most plaintiffs' declarations sufficiently substantiated but rejecting one plaintiff's claims for being "too speculative," unlike concerns arising from a different plaintiff's "prior experience").

Plaintiff's allegations fall somewhere in the middle. He provides two quotes concerning the potential professional consequences of publicly disclosing that an auditor is the subject of disciplinary proceedings. See ECF No. 74 (Reply) at 5–6. One is from a former president and CEO of the American Institute of Certified Public Accountants in a statement before Congress, claiming that "auditors belong to a profession in which a good reputation is essential and publication of unproven charges may end an individual auditor's career or audit firm's existence." Id. at 5 (citation omitted). The other comes from an August 3, 2022, Reuters news article: "The accounting and auditing profession believes that having a good reputation is crucial. But when the PCAOB publicly pursues unproven charges, it may end careers or audit firms' existence." Id. at 5–6 (citation omitted).

The Court, however, still finds these statements wanting. Consider, by comparison, the allegations of harm at issue in John Doe Co. No. 1. There, plaintiffs provided two sworn declarations. See 195 F. Supp. 3d at 21. The court found that the first was sufficiently specific: it attested that the declarant's industry was extremely competitive and required access to capital, and that being publicly identified as an investigation target would cause private investors and banks to "withdraw their capital access." Id. at 21–22. This conclusion was buttressed throughout with concrete examples, like colleagues losing credit lines after being charged with regulatory violations or minor crimes, or the plaintiff's own experience losing credit access after being improperly named in a civil lawsuit. Id. at 22. The second declaration, which the court found insufficient, mirrors what Plaintiff provided here. Id. It merely asserted that disclosure of

the ongoing investigation could fracture the plaintiffs' business relationships, which "could lead to substantial economic harm." Id. Like Doe's assertions, the declaration loosely identified the mechanism for potential damage but did not more specifically explain why harm was likely to result. Id. ("Assertions . . . about what 'could' happen, without any elaboration, explanation, or support, are inherently speculative.").

Having addressed the issues at the heart of Factor 1, the Court now turns to an argument that Plaintiff situates outside the five-factor test, but that is also properly addressed here because it concerns whether the "justification" for the Motion is "merely to avoid the annoyance and criticism that may attend any litigation." In re Sealed Case, 931 F.3d at 97. Preventing him from proceeding pseudonymously, Plaintiff claims, will discourage future lawsuits against PCAOB. See Mot. at 7. He argues that the odds are already stacked against potential PCAOB challengers, citing the procedural obstacles that must be surmounted before disputing the Board's finding in a federal court of appeals and the dearth of challenges via both that avenue and collateral attacks like this one (although he admits that two other such attacks are currently pending). See id. at 7 & n.1, 8. Denying his motion to proceed pseudonymously would ostensibly further deter would-be litigants. Id. at 8–9.

This claim, however, is pure speculation. Had he shown instead that auditors were filing suit against PCAOB and then dropping them after pseudonymous motions were denied or that potential plaintiffs would have sued were it not for the requirement to proceed publicly, the analysis might be different. Cf. Doe v. Princeton Univ., 2020 WL 3962268, at *5 (D.N.J. July 13, 2020) (finding no persuasive evidence of chilling effect where "several similarly situated plaintiffs have chosen to bring suits in their own names"). Yet this level of specificity is entirely lacking and is especially necessary here because Doe's reasoning would otherwise "make just

about any plaintiff entitled to pseudonym status." Opp. at 17. Doe's argument about a potential chilling effect thus falls short.

In sum, the first factor supports disclosure of Plaintiff's identity.

B. Factors 2–5

The second and third factors add further weight to the scale supporting disclosure because, as Plaintiff concedes, he "is an adult and is not in fear of retaliation from the Board." Mot. at 5. Whether these factors are thereby framed as "inapplicable," Doe v. Merrill Lynch, 2016 WL 10844617, at *1 (D.D.C. Apr. 28, 2016), or weighing "in favor of disclosure," id., their disposition makes Plaintiff's Motion less compelling insofar as they fail to support the use of a pseudonym.

The fourth factor is no different. As a threshold matter, both parties agree that PCAOB is part of the Government for purposes of this litigation. See Opp. at 9. This Court recently shifted its approach to this factor to focus on the "nature of the relief sought," favoring pseudonymity only when plaintiffs request individualized relief against a government defendant — *e.g.*, where a plaintiff seeks to vindicate only his individual right to a Free and Appropriate Public Education under the Individuals with Disabilities Education Act. Doe v. Blinken, No. 24-1629, ECF No. 3, at 5 (D.D.C. June 11, 2024) (collecting cases). But Plaintiff's challenge is not grounded in his specific circumstances or limited to individualized relief; "the only relevant fact about [him] is that he, like hundreds of other accountants before him and sure to follow him, is an accused respondent in a Board disciplinary proceeding." Mot. at 10. Plaintiff's action, rather, is exactly the kind that "intensifie[s]" "public interest" because his constitutional claims may "alter the operation of public law both as applied to [him] and, by virtue of the legal arguments presented, to other parties going forward." In re Sealed Case, 971 F.3d at 329; see also Doe v. McKernan,

2024 WL 1143932, at *3 (D.D.C. Feb. 23, 2024). That he requests an injunction and declaratory judgment only for himself, see Reply at 8, is insufficient to clear this hurdle; the petitioner in In re Sealed Case also requested relief for itself, but the court nonetheless rejected pseudonymity because its arguments would clearly apply beyond its case. Id.

While Doe demonstrates that not everyone agrees with this approach, it is the only one consonant with D.C. Circuit precedent. See Reply at 7–8. His citations to John Doe Corp. v. PCAOB, No. 24-1103, ECF No. 7, at 5 (S.D. Tex. June 10, 2024), and Professor Eugene Volokh's recent law review article thus miss the mark. See Reply at 7–8 (citing Eugene Volokh, The Law of Pseudonymous Litigation, 73 Hastings L. J. 1353, 1378, 1393 (2022)). Per In re Sealed Case, "There is a heightened public interest when an individual or entity files a suit against the government" that disfavors pseudonymity. See 971 F.3d at 329. By contrast, for both Volokh and the Fifth Circuit, a challenge to government action weighs in favor of pseudonymity. See Reply at 7–8; Doe Corp., No. 24-1103, ECF No. 7, at 5.

The parties agree that the fifth factor lends support to Plaintiff since Defendant is aware of his identity. See Reply at 4.

C. Other Arguments

Doe's additional arguments falling outside of the five-factor test do not move the needle. His primary contention is that his ongoing disciplinary proceeding before PCAOB — and the fact that he is the subject of such a proceeding — is confidential under the Sarbanes-Oxley Act. See Mot. at 4. The relevant statutory provision reads as follows:

> Except as provided in subparagraphs (B) and (C), all documents and information prepared or received by or specifically for the Board, and deliberations of the Board and its employees and agents, in connection with an inspection under section 7214 of this title or with an investigation under this section, shall be confidential and privileged as an evidentiary matter (and shall not be subject to civil

> discovery or other legal process) in any proceeding in any Federal or State court or administrative agency, and shall be exempt from disclosure, in the hands of an agency or establishment of the Federal Government, under the Freedom of Information Act (5 U.S.C. [§] 552a), or otherwise, unless and until presented in connection with a public proceeding or released in accordance with subsection (c).

15 U.S.C. § 7215(b)(5)(A) (emphasis added). Subsection (c), in turn, authorizes the Board to conduct disciplinary proceedings to determine whether sanctions are warranted — setting out the nature of the sanctions available and procedures in accordance with which they may be imposed. Notably, it states that "[h]earings under this section shall not be public, unless otherwise ordered by the Board for good cause shown, with the consent of the parties to such hearing." Id. § 7215(c)(2). Once a sanction has been imposed, subsection (d) requires that it (along with the name of the sanctioned individual) be reported to "the public (once any stay on the imposition of such sanction has been lifted)." Id. § 7215(d)(1)(C).

Doe reads these provisions in concert to suggest that the above-referenced "documents and information" lose their confidential status only if presented in connection with "a Board disciplinary proceeding in which all parties had consented to its being conducted in public (see id. § 7215(c)(2)) or a statutory appellate review proceeding before SEC that a Board respondent may pursue after the Board completes its otherwise strictly confidential disciplinary proceeding and issues a final sanctions order (see id. § 7217(c))." Reply at 11. Because neither has occurred here, he maintains, the fact that he is the subject of disciplinary proceedings is still privileged and confidential information.

The Board offers a different exegesis — that the "public proceeding" at which protected documents and information may be disclosed, as mentioned in the last clause of § 7215(b)(5)(A), includes federal judicial proceedings, and that it may therefore disclose otherwise confidential information (such as Plaintiff's name) in this case. See Opp. at 13–14 ("That provision thus

supports making Doe's identity public in this public proceeding in which the Board opposes Doe's motion to proceed under a pseudonym — *i.e.*, in this 'public proceeding' in which the Board seeks to 'present' Doe's name.").

The Board has the better of the argument. Another district court rejected precisely the interpretation that Doe espouses, and this Court is persuaded by its reasoning. See SEC v. Goldstone, 301 F.R.D. 593, 671 (D.N.M. 2014). To state the obvious, as that court observed, § 7215(b)(5)(A) refers to the presentation of confidential material in a "public proceeding" not a "public hearing" under subsection (c), id. — and the plain meaning of the former would embrace this proceeding in federal district court. More fatally, "the disjunctive 'or' [in the last clause of § 7215(b)(5)(A)] demonstrates that public proceedings are different from the disciplinary procedures in subsection (c)." Id. To avoid rendering the public-proceeding exception superfluous, then, the Board must be able to present the information in some forum other than a public disciplinary proceeding, and Plaintiff has not convinced the Court that a proceeding like this one does not count. Cf. id. at 671–72 (holding that the state- and federal-court proceedings referenced in the sentence are the public proceedings where PCAOB information may be presented). That the confidentiality of PCAOB proceedings does not extend to appellate proceedings before the SEC, as Plaintiff acknowledges, see Mot. at 8, or to subsequent judicial review, see 15 U.S.C. § 78y(a), further suggests that "Doe is not statutorily entitled to confidentiality in this Court." Opp. at 14. The Court need not pin down exactly how this statute must be interpreted, but it agrees with Defendant that it does not mandate or even encourage confidentiality in this proceeding.

Plaintiff retorts that this reading would render the confidentiality provision "circular and self-contradictory" because Congress had earlier in that provision insulated the at-issue

information from "subpoena or other discovery in 'any' federal court proceedings." Reply at 11. But these two clauses are readily reconcilable: the Board and the targets of its investigations are not required to divulge such information, but either can choose to do so by presenting it. See Goldstone, 301 F.R.D. at 674 (finding that SEC could "present" PCAOB documents, which PCAOB had shared with it under 15 U.S.C. § 7215(b)(5)(B), by incorporating that information into a pleading or relying on it as source in federal-court proceeding); cf. Bennett v. Sprint Nextel Corp., 2012 WL 4829312, at *2 (W.D. Mo. Oct. 10, 2012) (finding privilege in two circumstances: discovery requests directed to Board or to targets of its investigations).

Doe's final arguments are tenuous. First, he emphasizes that the only other court to have ruled on a pseudonymity motion in a case against this Defendant based on similar underlying constitutional challenges allowed the corporate plaintiff to proceed pseudonymously. See Reply at 7; Doe Corp., No. 24-1103, ECF No. 1 (Doe Corp. Compl.) at 1; id., ECF No. 7, at 5. Because Plaintiff is a "natural person, not a corporation," he insists that his case for pseudonymity is even stronger. See Reply at 7 n.5. As the Board rightly observes, however, the court's decision was an interim ruling based on the "unique" — *i.e.*, uncontested — "position of the suit," pending a full hearing whenever defendant entered an appearance. See Doe Corp., No. 24-1103, ECF No. 7, at 5. The Court also rejects for lack of support Plaintiff's novel suggestion that his likelihood of success favors pseudonymity. See Reply at 3 n.2.

* * *

On balance, although the fifth factor favors Plaintiff, the first through fourth tip the scales toward disclosure. The Court therefore finds that Doe has not met "the weighty burden" of "demonstrating a concrete need" for pseudonymity in this lawsuit. In re Sealed Case, 971 F.3d at 326.

## III. Conclusion

The Court accordingly ORDERS that:

1. Plaintiff's [66] Motion to Proceed Under Pseudonym is DENIED; and
2. Within fourteen days of the Court's Order, Plaintiff shall advise the Clerk of the Court whether he wishes to proceed with filing the Complaint on the public docket using his real name, and, if so, file such Motion on the public docket.

/s/ *James E. Boasberg*
JAMES E. BOASBERG
Chief Judge

Date: August 2, 2024