IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JOHN DOE,<br><br>    *Plaintiff*,<br><br>v.<br><br>PUBLIC COMPANY ACCOUNTING<br>OVERSIGHT BOARD,<br><br>    *Defendant*. | Civil Action No. 1:24-cv-780-ACR |
| JOHN DOE,<br><br>    *Plaintiff*,<br><br>v.<br><br>PUBLIC COMPANY ACCOUNTING<br>OVERSIGHT BOARD, et al.,<br><br>    *Defendants*. | Civil Action No. 1:25-cv-186-ACR<br>(consolidated with No. 1:24-cv-<br>780 (lead), 1:25-cv-70) |

**PLAINTIFFS' SUR-REPLY ON
THE PARTIES' CROSS MOTIONS
<u>FOR SUMMARY JUDGMENT</u>**

Ian D. Roffman (*pro hac vice*)
Melanie V. Woodward (*pro hac vice*)
NUTTER, MCCLENNEN & FISH LLP
Seaport West, 155 Seaport Blvd.
Boston, MA 02210
Telephone: (617) 439-2421
Email: iroffman@nutter.com

*Attorneys for Plaintiff John Doe 1 (No. 24-cv-780)*

Russell G. Ryan (DC Bar # 414472)
Casey Norman (DC Bar # 90016178)
NEW CIVIL LIBERTIES ALLIANCE
4250 N. Fairfax Dr., Suite 300
Arlington, VA 22203
Telephone: (202) 869-5210
Email: russ.ryan@ncla.legal

*Attorneys for Plaintiffs John Doe 1 (No. 24-cv-780) and John Doe 2 (No. 25-cv-186)*

Thomas K. Potter, III (*pro hac vice*)
BURR & FORMAN, LLP
222 Second Avenue South, Suite 2000
Nashville, TN 37201
Telephone: (615) 724-3231
Email: tpotter@burr.com

*Attorney for Plaintiff John Doe 2 (No. 25-cv-186)*

1.     ***Right to Jury Trial and Article III Court.***[1] The Board's position on Plaintiffs' right to a jury trial in an Article III court suffers from at least three flaws. First, in challenging subject matter jurisdiction, the Board urges this Court to disregard two binding Supreme Court precedents—*Free Enterprise Fund* and *Axon/Cochran*—in which the Supreme Court *explicitly* rejected the Board's claim that Exchange Act Section 25(a) strips district courts of jurisdiction to hear structural constitutional claims that were materially indistinguishable from those asserted here. Central to the Board's argument are its equally meritless propositions that the Board's *structural* inability to offer an Article III adjudication or jury trial and its equally *structural* inability to afford a fair, unbiased, and level-playing-field adjudication are somehow not structural constitutional flaws.

The constitutional defects here are even more structural than the removal-protection and due process challenges the Supreme Court deemed structural in *Free Enterprise Fund* and *Axon/Cochran*. They are also plainly more "structural" than the case-specific First Amendment challenge to a bespoke agency document demand that the D.C. Circuit recently deemed subject to district court jurisdiction in *Media Matters for America v. FTC*, No. 25-5302, 2025 WL 2988966, at *4-5 (D.C. Cir. Oct. 23, 2025) (order denying stay of preliminary injunction). In short, Plaintiffs' here-and-now constitutional harm from the Board's structural defects are far more similar to those in *Free Enterprise Fund*, *Axon/Cochran*, and even *Media Matters*, than to the claims in *Thunder Basin*—the case the Board primarily relies upon.

Even under the *Thunder Basin* analysis, jurisdiction exists because (1) if this Court declines to exercise jurisdiction, Plaintiffs might *never* get a future opportunity to seek redress for the constitutional injuries they seek to prevent from happening (*see* Pls. Reply at 15-16; *cf. Media*

---

[1] The Board argues that Plaintiffs have "abandoned" or "conceded" anything not specifically addressed in their Response and Reply to the Parties' Cross-Motion for Summary Judgment. Not so. For clarity, Plaintiffs rest on the arguments in their Memorandum in Support of their Motion for Summary Judgment, and again now on their Response and Reply. By simply refraining from repeating their arguments in subsequent briefs, they are not conceding them.

*Matters*, 2025 WL 2988966, at *4 (distinguishing *Thunder Basin* because post-harm opportunity for judicial relief "might never happen"); (2) the constitutional defects at issue here are collateral to the merits of the underlying Board disciplinary charges against Plaintiffs (*see* Pls. Reply at 17-18); and (3) Supreme Court precedent holds that the Board and SEC lack expertise and competence to adjudicate those constitutional questions. *See Axon Enter., Inc.*, 598 U.S. 175, 194-95 (2023) (quoting *Free Enter. Fund v. PCAOB*, 561 U.S. 477, 491 (2010)); *accord Carr v. Saul*, 593 U.S. 83, 92 (2021) ("agency adjudications are generally ill-suited to address structural constitutional challenges" (citing *Free Enter. Fund* and other cases)); *Media Matters*, 2025 WL 2988966, at *5 (finding "no agency-expertise benefit" in deciding pre-enforcement constitutional challenge).

Second, despite the Supreme Court's admonition in *SEC v. Jarkesy* that the "public rights" exception to Article III jurisdiction is an extremely limited (and dubious) one that should not be expanded any further, 603 U.S. 109, (2024), 131-32, the Board's proffered approach to "public" rights would sweep in even *private* claims by a *private* corporation against *private* individuals that threaten to deprive those private individuals of their *private* property and *private* liberty interests. In its voluminous briefing, the Board offers no plausible defense of that oxymoron. By any fair reading, this case is indistinguishable from *Jarkesy*—involving the same statutory scheme and remedy—and *Jarkesy* emphatically rejected the Board's expansive view of public rights.

Third, the Board's suggestion that Plaintiffs must await the final outcome of the Board's proceedings (and presumably all appeals) to find out if they are entitled to a jury trial because the end result *might* not include a money penalty is contrary to established law and, frankly, incredible. The Board has *already directed the hearing officer to adjudicate civil monetary penalties* and has never withdrawn that directive. *See* SOF ¶¶ 48, 50. The Board's approach would demand that Plaintiffs first endure years of litigation before the hearing officer, Board, SEC, and then an appeal

to a federal Court of Appeals before learning whether there *should* have been a jury trial all along. And if anyone along the way belatedly decides there should have been a jury trial—"oopsies"— then the parties go back to Square One to do it all over again with a jury. Beyond the obvious illogic and unfairness of this backwards approach, that is not how federal jury-trial rights are determined. Because the Board's proceeding against Plaintiffs unquestionably *threatens* Plaintiffs with staggering financial penalties, there is no plausible post-*Jarkesy* argument that Plaintiffs' right to a jury trial should be determined with hindsight only after all the dust settles.

2.      *Secrecy.* In arguing that this Court lacks jurisdiction over Plaintiffs' Due Process secrecy claim, the Board asserts that "the pertinent question is whether the challenge goes to an agency's 'structure or very existence.'" Reply at 16. That standard is met here. The secrecy of Board disciplinary hearings is not discretionary but a feature mandated by statute and embedded into its structure. 15 U.S.C. § 7215(c).

On the merits of Plaintiffs' secrecy claim, the Board notably identifies no other comparable government regime where disciplinary proceedings are conducted in secret, with prosecutors and the hearing officer having access to all prior nonpublic adjudications, and respondents having access to none. *See* SOF ¶¶ 33-37. This asymmetry is not mitigated by the Board's assertions that prior decisions are nonprecedential and that respondents remain free to raise any argument they chose. Access to prior adjudications matters precisely because they reveal how legal standards are interpreted and applied in practice—particularly in a regime that involves complex substantive and procedural questions requiring the exercise of adjudicatory discretion. The result is a fundamentally unlevel playing field where prosecutors litigate with complete visibility, but Plaintiffs—like all respondents—are left in the dark.

3.    ***Removal Protections.*** In defending the hearing officer's removal protection protections, the Board argues that Plaintiffs somehow waived their argument. But the only case it cites does not support its position. Reply at 21 (*citing Al-Tamimi v. Adelson*, 916 F.3d 1, 6 (D.C. Cir. 2019)). *Al-Tamini* references a principle of *appellate* briefing that an argument is forfeited if not raised in the opening *appellate* brief. It cites no such principle in the district court. In any event, Plaintiffs have consistently argued in their Complaints and prior briefs that the hearing officer is afforded too many layers of removal protection and raised the specific protections of the DC Human Rights Act in its Opposition to the Board's cross-motion for summary judgment. The Board's further position that the SEC is not bound by the DC Human Rights Act is a clever misdirection. Removal of the hearing officer requires a vote of *both* the SEC and the Board (SOF ¶¶ 23, 24), and the *Board* is subject to the DC Human Rights Act, which effectively affords at least two layers of for-cause protection from removal by a President.

4.    ***Private Non-Delegation.*** The Board argues that *Alpine Securities Corp. v. FINRA*, 121 F.4th 1314 (2024), disposes of Plaintiffs' private non-delegation claim. It does not. In *Alpine*, the D.C. Circuit *granted* a preliminary injunction, holding that the absence of real-time SEC review before a serious FINRA sanction took effect likely "violates the private non-delegation doctrine" because after-the-fact review would "be too little too late." *Id.* at 1319, 1326. Here, the private citizens employed by the Board made many critical and irreversible decisions without *any* SEC oversight, including: (1) authorizing investigations of Plaintiffs; (2) as part of the investigations, deciding what documentary evidence and testimony would be demanded and from whom; and (3) authorizing disciplinary proceedings against Plaintiffs. Plaintiffs had no meaningful opportunity for contemporaneous SEC review of those life-changing decisions; the only path to SEC oversight

runs through years of costly investigation and disciplinary proceedings. As in *Alpine*, delayed review is "too little too late."

5.       ***Non-Impartial Tribunal.*** The Board concedes that the "typical model" set out in *Withrow v. Larkin*, 21 U.S. 35 (1975), for combining prosecutorial and adjudicatory functions includes the respondent's participation in the investigative phase—something absent from Board procedures. The Board thus pivots to *FTC v. Cement Institute*, 333 U.S. 683 (1948), arguing that *Cement* permits agencies to adjudicate issues after reaching conclusions through *ex parte* investigations. Reply at 12-13. That reading is incorrect. In *Cement*, the agency investigations related to an industry-wide pricing practice, not the conduct of particular respondents. *Marquette Cement Mfg. Co. v. FTC*, 147 F.2d 589, 591 (7th Cir. 1945). And the FTC industry-wide investigations occurred "*long before*" the FTC had filed its complaint against the individual respondents. *Withrow*, 421 U.S. at 48 (emphasis added) (citing *Cement*, 333 U.S. at 700). Here, by contrast, the Board's received one-sided, unrebutted evidence from its enforcement staff immediately before—and specifically concerning— the very allegations to be adjudicated against Plaintiffs.

Acknowledging *Cement's* inapplicability, the Board next invokes *N.L.R.B. v. Donnelly Garment Co.*, 330 U.S. 219 (1947), which held there was no due process violation when an NLRB examiner reheard a case after remand. *See id.* at 237. That precedent does not apply either. In *Donelly*, the examiner passed judgment on the respondent's case only after an adversarial hearing involving the respondent. *See id.* Here, the Board *twice* prejudged the Plaintiffs' cases—before any hearing and without Plaintiffs' participation. Unlike *Donnelly*, Plaintiffs here had no opportunity to rebut evidence or present their cases at those earlier stages.

CONCLUSION

For the foregoing reasons and those stated in Plaintiffs' prior briefs, the Doe Plaintiffs request that this Court enter summary judgment in their favor on all counts and deny the Board's cross-motion for summary judgment.

Dated: February 3, 2026                          Respectfully submitted,

*/s/ Russell G. Ryan*
Russell G. Ryan (DC Bar # 414472)
Casey Norman (DC Bar # 90016178)
NEW CIVIL LIBERTIES ALLIANCE
4250 N. Fairfax Dr., Suite 300
Arlington, VA 22203
Telephone: (202) 869-5210
Email: russ.ryan@ncla.legal

*Attorneys for Plaintiffs John Doe 1 (No. 24-cv-780) and John Doe 2 (No. 25-cv-186)*

Thomas K. Potter, III (*pro hac vice*)
BURR & FORMAN, LLP
222 Second Avenue South, Suite 2000
Nashville, TN 37201
Telephone: (615) 724-3231
Email: tpotter@burr.com

*Attorney for Plaintiff John Doe 2 (No. 25-cv-186)*

*/s/ Ian D. Roffman*
Ian D. Roffman (*pro hac vice*)
Melanie V. Woodward (*pro hac vice*)
NUTTER, MCCLENNEN & FISH LLP
Seaport West, 155 Seaport Blvd.
Boston, MA 02210
Telephone: (617) 439-2421
Email: iroffman@nutter.com

*Attorneys for Plaintiff John Doe 1 (No. 24-cv-780)*

<u>CERTIFICATE OF SERVICE</u>

I certify that, on February 3, 2026, a copy of the foregoing document was served upon all counsel of record through the Court's ECF system.

*/s/ Ian D. Roffman*

7794435

7